CA No. 23-991

# In the
# United States Court of Appeals
# For the Ninth Circuit

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

GREGORY PHEASANT,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Nevada,

**District Court No.** 3:21-cr-24 (Robert C. Jones, *J.*)

## GOVERNMENT'S OPENING BRIEF

JASON M. FRIERSON
United States Attorney

ROBERT L. ELLMAN
Appellate Chief

ADAM FLAKE
Assistant U.S. Attorney
501 Las Vegas Boulevard South
Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
adam.flake@usdoj.gov
*Attorneys for the United States*

Date submitted: November 17, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................iii

I.      STATEMENT OF JURISDICTION AND BAIL STATUS ................ 1

II.     ISSUE PRESENTED FOR REVIEW ................................................. 1

        Whether the district court erred by holding that 43 U.S.C. § 1733
        violates the nondelegation doctrine.

III.    RELEVANT FEDERAL STATUTES ................................................. 1

IV.     STATEMENT OF THE CASE ........................................................... 2

V.      STATEMENT OF THE FACTS ........................................................ 7

VI.     SUMMARY OF ARGUMENT ........................................................ 10

VII.    ARGUMENT .................................................................................. 11

        A.     Standard of Review.................................................................. 11

        B.     The District Court Erred in Determining that 43 U.S.C. § 1733
               Violates the Nondelegation Doctrine. ..................................... 11

               1.     Analytical Framework........................................................ 11

               2.     Argument ........................................................................... 6

VIII.   CONCLUSION .............................................................................. 25

IX.     STATEMENT OF RELATED CASES ........................................... 26

        CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Federal Cases**

*A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935) ................ 16

*American Power & Light Co. v. Securities & Exchange Commission*,
    329 U.S. 90 (1946) ................................................................................. 13

*Aposhian v. Wilkinson*, 989 F.3d 890 (10th Cir. 2021) .................................... 22

*Camfield v. United States*, 167 U.S. (1897) ...................................................... 11

*Fed. Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591 (1944) .............. 14

*Gundy v. United States*, 139 S. Ct. 2116 (2019) ..........................................*passim*

*Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446 (5th Cir. 2022) .......................... 22

*Kleppe v. New Mexico*, 426 U.S. 529 (1976) ............................................... 11, 12

*Loving v. United States*, 517 U.S. 748 (1996) .................................................. 24

*Mistretta v. United States*, 488 U.S. 361 (1989) .......................................... 12, 14

*National Broadcasting Co. v. United States*, 319 U.S. 190 (1943) ....................... 14

*Panama Refin. Co. v. Ryan*, 293 U.S. 388 (1935) ............................................ 16

*Sec. & Exch. Comm'n v. Jarkesy*, 143 S. Ct. 2688 (2023) .................................. 22

*Touby v. United States*, 500 U.S. 160 (1991) .................................................... 14

*United States v. Brown*, 552 F.2d 817 (8th Cir. 1977) ................................. 20, 21

*United States v. Cassiagnol*, 420 F.2d 868 (4th Cir. 1970) .................... 14, 15, 22

*United States v. Chi Tong Kuok*, 671 F.3d 931 (9th Cir. 2012) .......................... 11

*United States v. Cruscial*, 2019 WL 1087150 (D. Or. Mar. 7, 2019) ................. 15

*United States v. Grimaud*, 220 U.S. 506 (1911) .................................... 19, 20, 24

*United States v. Kittel*, 2021 WL 3823185 (D. Or. Aug. 26, 2021) ................... 15

*United States v. Melgar-Diaz*, 2 F.4th 1263 (9th Cir. 2021) ........................13, 24

*United States v. Moriello*, 980 F.3d 924 (4th Cir. 2020)................................ 15

*United States v. Mumford*, 2017 WL 652449 (D. Or. Feb. 16, 2017) ............... 15

*United States v. San Francisco*, 310 U.S. 16 (1940) ......................................... 11

*Whitman v. American Trucking Associations*, 531 U.S. 457 (2001)..................... 14

*Yakus v. United States*, 321 U.S. 414 (1944) ................................................... 14

**Federal Statutes**

16 U.S.C. § 3 ...................................................................... 19, 20, 21

16 U.S.C. § 551 ............................................................................... 19

18 U.S.C. § 111................................................................................ 1, 6

18 U.S.C. § 3231 ................................................................................ 1

18 U.S.C. § 3731 ................................................................................ 1

28 U.S.C. § 1291 ............................................................................... 1

40 U.S.C. § 318................................................................................. 14

40 U.S.C. § 1315 .............................................................................. 14

43 U.S.C. § 1701 .............................................................................16, 18

43 U.S.C. § 1702 .............................................................................17, 23

43 U.S.C. § 1732 .............................................................................17, 23

43 U.S.C. § 1733 ...................................................................*passim*

**Federal Rules**

Fed. R. App. P. 32 ................................................................ 27

**Federal Regulations**

36 C.F.R. § 2.11 .................................................................. 20

36 C.F.R. § 2.32 .................................................................. 20

42 C.F.R. § 8365.1-4 ............................................................. 2

43 C.F.R. § 8341.1 ......................................................... 2, 16, 23

**Other Authorities**

U.S. Constitution, Article 4, § 3 ............................................. 11

# I.

## STATEMENT OF JURISDICTION AND BAIL STATUS

The government appeals the district court's order dismissing the indictment against Defendant-Appellee Gregory Pheasant. ER-3–26.[1] The district court had jurisdiction under 18 U.S.C. § 3231. The district court issued the order of dismissal on April 26, 2023. ER-3. The Government filed a timely notice of appeal on May 23, 2023 . ER-223. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3731.

Pheasant is not incarcerated.

# II.

## ISSUE PRESENTED FOR REVIEW

Whether the district court erred by holding that 43 U.S.C. § 1733 violates the nondelegation doctrine.

# III.

## RELEVANT FEDERAL STATUTES

*See* Addendum

---

[1]     "ER" denotes the government's Excerpts of Record filed with this brief; "ECF No." denotes the district court's docket.

## IV.

## STATEMENT OF THE CASE

On July 15, 2021, the federal grand jury in the District of Nevada returned an indictment charging Pheasant with assault on a federal officer in violation of 18 U.S.C. §§ 111(a)(1) & (b) (Count 1), resisting issuance of citation or arrest in violation of 42 C.F.R. § 8365.1-4(a)(4) (Count 2), and failing to use required taillight at night in violation of 43 C.F.R. §§ 8341.1(f)(5) & (h) (Count 3). ER-221–23.

On March 17, 2023, Pheasant filed a motion to dismiss, arguing among other things that 43 U.S.C. § 1733 is unconstitutional under the nondelegation doctrine, and that the indictment lacked specificity. ER-160–184. He did not argue that Bureau of Land Management ("BLM") rangers lack law enforcement authority. *See id*. He also filed a motion to suppress, requesting an evidentiary hearing. ER-192–208. On April 7, the government filed timely oppositions to the motion to dismiss and the motion to suppress. ER-123–145; ER-146–159.

On April 11, the district court issued a minute order, stating: "IT IS ORDERED that a Status Conference & Calendar Call is set for Thursday, April 13, 2023, [at which] the parties shall be prepared to discuss (1) Rule 16 Amendments, (2) *Scheduling* a hearing date on the Motion to Suppress (ECF

No. 57 ) and Motion to Dismiss (ECF No. 59 ), and (3) Calendar Call for the trial set on 5/15/2023." *See* ER-236 at 65 (emphasis added).

At that hearing, rather than discussing the *scheduling* of argument on the motions to dismiss and suppress, the court indicated that it wanted substantive argument on the issues raised in those motions. *See* ER-89–90 (defense counsel and government counsel stating they had interpreted the court's order to be a scheduling conference, but that they would address the substantive arguments if the court wished, and the court saying it did want substantive argument).

Pheasant's counsel argued that 43 U.S.C. § 1733 violated the nondelegation doctrine, and the court responded, "You're just marching up a useless argument, counsel, and it will go nowhere either with this court or with the circuit." ER-93–95. The court then asked "are BLM officers like forest service officers, statutory police officers in federal service, are they authorized to carry a weapon? Do they have arrest authority?" ER-95–96. Defense counsel responded that he did not know "off the top of his head[.]" ER-96. The court responded, "You better find out. Because that seems critical." *Id*.

As the hearing continued, the government argued that 43 U.S.C. § 1733 does not violate the nondelegation doctrine, and the court asked, "what is the status of a BLM officer, especially one who is using lights even on an ATV?" ER-99–100. The government responded, "I do know that they are sworn law

3

enforcement officers. They're required to carry a weapon. Unfortunately, I don't have the authority in front of me." ER-100–101. The court then chided the parties for not being prepared to address an argument the court raised *sua sponte* just a few minutes earlier: "You guys on both sides, you need to further research this issue because your understanding is a little shallow. You know, that's pretty critical, whether they have authority to require permits." ER-102.

Turning to the specificity of the indictment, the court stated, "I need a bill of particulars that I can stand on and advise the jury." ER-103. The government (AUSA Flake) stated that the government would provide a bill of particulars, and the court responded, "Okay. You should." ER-103–104. ASUA St. Clair (who acted as the government's lead counsel in district court), then clarified, "We were planning on superseding this indictment on April 27, and what I could do if the Court was okay with it, is I could actually add language. Rather than doing a separate document, I could add language to the assault charge when we supersede, if the Court would be fine with that, to add more factual language to support the assault." ER-105. The court responded, "Probably so. It would be a good idea." *Id.* AUSA St. Clair then reiterated, "[W]e have scheduled a grand jury in Reno on April 27. That is our plan." ER-106. The court responded, "That's a safe route." *Id.*

4

With respect to the motion to suppress, the court denied Pheasant's request for an evidentiary hearing. ER-115. The court then said, "I am requiring a bill of particulars on Count 1. Count 2 and 3, you're going to issue another superseding indictment, and we'll revisit these issues when you do, if you base it solely on the regulations, and we'll go from there." ER-116. AUSA St. Clair responded, "[W]hat I was discussing earlier was instead of doing a bill of particulars, we were going to now, also, in our superseding indictment we will add language to Count 1 that may … negate the need for a bill of particulars." *Id*. The court responded, "We'll see if defense agrees." *Id*. Defense counsel responded, "[W]e'll review the superseding indictment when it's handed down. If we think there's a deficiency, we'll take the appropriate action." *Id*.

Defense counsel then asked if he could file a reply in support of the motion to dismiss, and the court responded: "No. You're going to want to file a new motion to dismiss. I've already told you, you're barking up the wrong tree. So you're going to want to file a new motion to dismiss. Okay?" ER-116–117. With respect to the trial going forward as scheduled on May 15, the court then asked the government, "Can you get a bill of particulars on trial or a superseding indictment?" ER-117. AUSA St. Clair responded, "Unfortunately, Your Honor, we cannot get a superseding indictment until April 27th." *Id*. The

5

court then stated, "Okay. May 15th is the trial date, folks. You're required to do a bill of particulars or supersede the indictment." ER-118.

On April 14, Pheasant filed a motion for leave to file a reply in support of his motion to dismiss and the proposed reply, ER-51–69, and the minute order on the district court's docket required the government to respond by April 28. ER-237 at ECF No. 69.

On April 18, Pheasant filed a supplemental motion to dismiss, following the court's lead and arguing for the first time that BLM officers lack the authority to enforce federal law and that, therefore, assaulting them could not violate 18 U.S.C. §§ 111(a)(1) & (b). ER-27–35. The minute order memorializing the filing of the supplemental motion on the court's docket did not include a response date. *See* ER-237 at ECF No. 74. Therefore, the time to respond was governed by Federal District of Nevada Local Criminal Rule 12-1(a)(2), which states that unless otherwise ordered by the court, a response to a pretrial motion must be filed within 14 days of the service of the motion, *i.e.*, May 1.

Eight days later, on April 26—*before* the government filed a response to Pheasant's motion seeking leave to file a reply (which response was due April 28), *before* the government filed a response to Pheasant's supplemental motion (which response was due May 1), and *one day before* the government was able

6

to seek a superseding indictment (which the government specifically informed the court it was planning to do on April 27)—the court issued an order dismissing the case. ER-3–26. Specially, it held that Counts 1 and 2 were defective because BLM rangers lacked law enforcement authority; that Counts 2 and 3 were defective because 43 U.S.C. § 1733 violates the nondelegation doctrine; and that Counts 1 and 2 were defective because the indictment was insufficiently specific. ER-9.

The government filed a timely notice of appeal on May 23, 2023. ER-223.

## V.

## STATEMENT OF THE FACTS

On May 28, 2021, at approximately 9:45 p.m., BLM Ranger Michael Yost was patrolling the Moon Rocks recreation area, which is on BLM land, in a fully marked BLM Utility Terrain Vehicle ("UTV") equipped with emergency lights and siren.[2] ER-187 (Yost Incident Report). He saw two motorcycles driving with no working/activated red taillights. *Id*. Ranger Yost later determined that Pheasant was driving one of these motorcycles. *Id*. Ranger Yost activated his lights and siren on his UTV and got behind the

---

[2]     Ranger Yost noted in his report that sunset on May 28, 2021, was at approximately 9:31 p.m. ER-187.

motorcyclists. *Id.* Both motorcyclists failed to yield—turning off the road and continuing cross-country away from Ranger Yost's UTV. *Id.* Ranger Yost attempted to follow by turning off the road onto a trail when Pheasant turned around and rode his motorcycle directly at Yost, almost hitting him, before riding away. *Id.*

At about 10 p.m., Ranger Yost saw Pheasant and another motorcyclist still driving without rear taillights illuminated. *Id.* Ranger Yost again activated his emergency lights and siren, and again neither motorcyclist stopped. *Id.* Ranger Yost followed behind both motorcyclists while they were "flipping [him] off" and "quickly accelerating, causing their tires to spin and send rocks and dirt at [him] and others in the area," and yelling expletives at him. *Id.*

Approximately five minutes later, Ranger Yost saw Pheasant and another motorcyclist heading in Ranger Garrett Sarcinella's direction and immediately notified him. ER-187, 190. Ranger Sarcinella activated his lights behind the motorcyclists, but Pheasant quickly turned off the road to the south, and Ranger Sarcinella followed him. *Id.* Eventually, Pheasant turned right in front of Ranger Sarcinella and broke traction on the road, only to speed off again. ER-190.

Ranger Sarcinella followed and attempted to stop Pheasant again. *Id.* Pheasant was not moving fast, but during this slow elude, he turned around on

his bike while gesturing with his middle finger towards Ranger Sarcinella and yelled, "[F]uck you pig." *Id.* Ranger Sarcinella continued to drive behind Pheasant with his lights activated. ER-187. Pheasant then quickly applied his brakes and stopped right in front of Ranger Sarcinella's UTV, forcing Sarcinella to lock up his UTV's brakes and nearly caused a collision. ER-190.

At this point, Pheasant's motorcycle and Ranger Sarcinella's UTV were stopped, with the rear wheel of the motorcycle just in front of the UTV. ER-190–191. The UTV's emergency lights were still illuminated. ER-190. Pheasant looked over his shoulder at Ranger Sarcinella and twisted the motorcycle's throttle, spraying Ranger Sarcinella's face with rocks and dirt. ER-191.[3] While Ranger Sarcinella was wincing in pain and temporarily disoriented, Pheasant sped off once again. *Id.*

Meanwhile, Ranger Yost drove to the top of a hill to see if he could spot Pheasant again, saw Pheasant failing to yield when Ranger Sarcinella tried to stop him, saw him drive towards the Moon Rocks pit, and followed him. ER-187. To remain undetected, Ranger Yost chose *not* to activate his emergency lights, pulled his UTV up to Pheasant and the other motorcyclist, quickly got out and stuck his baton through the spokes of Pheasant's front motorcycle

---

[3]     In the motocross community, this is known as "roosting" someone. *Id.*

wheel, preventing Pheasant from riding off. *Id.* With his motorcycle immobilized, Pheasant continued verbally abusing Ranger Yost for several minutes, but eventually asked him to write him a "ticket" for the taillight violation, which Yost did. *Id.*

## VI.

## SUMMARY OF ARGUMENT

Congress has delegated the authority to manage federal lands to the Secretary of the Interior. In so doing, it provided the Secretary with an intelligible principle to cabin her authority and set forth policies to guide her management of the public lands. The Supreme Court and this Court have repeatedly upheld similar grants of authority, and the district court's decision to invalidate Congress's grant of authority here runs afoul of those precedents. Because that was the sole basis for the court dismissing Count 3, this Court should reverse the district court's dismissal of that count and hold that 43 U.S.C. § 1733(a) is constitutional.[4]

---

[4] The court alternatively dismissed Counts 1 and 2 because they were insufficiently pleaded and because the rangers lacked the authority to enforce the law. ER-24. Because the government agreed to file a superseding indictment, ER-76 (something to which, the government believed at the time, the court had agreed, and indeed, which the court explicitly ordered the government to do, ER-116), the government does not contest that those counts were insufficiently pleaded. The government disagrees with the district court's

## VII.

## ARGUMENT

**A.     Standard of Review**

This Court reviews *de novo* a district court's determination that a

statutory regime violates the nondelegation doctrine. *United States v. Chi Tong*

*Kuok*, 671 F.3d 931, 937 (9th Cir. 2012).

**B.     The District Court Erred in Determining that 43 U.S.C. § 1733 Violates the Nondelegation Doctrine.**

*1.     Analytical Framework*

Congress has the power to "make all needful Rules and Regulations

respecting the Territory or other Property belonging to the United States...."

United States Constitution, Article 4, § 3. The Supreme Court has generally

viewed Congress's power to interpret what is "needful" expansively. *See, e.g.,*

*Kleppe v. New Mexico*, 426 U.S. 529 (1976) (upholding Congress's power to pass

legislation regarding wild burros); *see also United States v. San Francisco*, 310 U.S.

16 (1940) (upholding Congress's power to pass legislation granting San

---

conclusion that the rangers lack law enforcement authority, but because the
lack of specificity serves as an independent basis to dismiss Counts 1 and 2, it
likewise does not raise, in this appeal, the issue of the rangers' law enforcement
authority. When the government obtains another indictment against Pheasant,
if the district court once again dismisses Counts 1 and 2 on the basis that
rangers lack the authority to enforce federal law, the issue of the BLM rangers'
law enforcement authority will be ripe and the government will determine at
that time whether to appeal that ruling.

Francisco lands and rights-of-way with certain prohibitions); *Camfield v. United States*, 167 U.S. 525 (1897) (upholding Congress's power to pass legislation regarding unlawful occupancy on public lands). As indicated in *Kleppe,* the Supreme Court interprets Congress's authority on public lands as similar to a state's police power. *See Kleppe*, 426 U.S. at 540 ("The general government doubtless has a power over its own property analogous to the police power of the several states, and the extent to which it may go in the exercise of such power is measured by the exigencies of the particular case…. In short, Congress exercises the powers both of a proprietor and of a legislature over the public domain.") (citations, quotations, and alterations omitted).

The nondelegation doctrine generally forbids Congress from transferring "powers which are strictly and exclusively legislative" to other branches of government. *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (internal citation omitted). But the Supreme Court has consistently held that Congress "may 'obtain[ ] the assistance of its coordinate Branches'—and in particular, may confer substantial discretion on executive agencies to implement and enforce the laws." *Id*. (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)) (alterations in *Gundy*). It has further recognized that "in our increasingly complex society, replete with ever changing and more technical problems … Congress simply cannot do its job absent an ability to delegate

power under broad general directives." *Mistretta*, 488 U.S. at 372. For that reason, the Supreme Court has clarified that a delegation is "constitutionally sufficient if Congress clearly delineates" (1) "the general policy" to be pursued, (2) "the public agency which is to apply it," and (3) "the boundaries of th[e] delegated authority." *American Power & Light Co. v. Securities & Exchange Commission*, 329 U.S. 90, 104 (1946); *see also United States v. Melgar-Diaz*, 2 F.4th 1263, 1267 (9th Cir. 2021) ("This means that a delegation is permissible if Congress has made clear to the delegee the general policy [the delegee] must pursue and the boundaries of [the delegee's] authority.") (citations, quotations, and alterations omitted).

A court engaged in a nondelegation inquiry must look to the challenged statute to determine what task it delegates and what instructions it provides. *Gundy*, 139 S. Ct. at 2123. "[A] nondelegation inquiry always begins (and often almost ends) with statutory interpretation. The constitutional question is whether Congress has supplied an intelligible principle to guide the delegee's use of discretion. So the answer requires construing the challenged statute to figure out what task it delegates and what instructions it provides." *Id.* (citations omitted).

"These standards are not demanding," and the Supreme Court has "repeatedly turned down many non-delegation challenges, including in cases

13

involving very broad conferrals of authority." *Id.* at 1267. For example, the
Supreme Court has upheld the delegation of broad conferrals of authority to
regulate "in the public interest," *National Broadcasting Co. v. United States*, 319
U.S. 190, 226 (1943), to set "fair and equitable prices," *Yakus v. United States*,
321 U.S. 414, 426 (1944), to set "just and reasonable rates," *Fed. Power
Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 611 (1944), and to issue air
quality standards that are "requisite to protect the public health." *Whitman v.
American Trucking Associations*, 531 U.S. 457, 475-76 (2001); *see also Mistretta*,
488 U.S. at 374–77 (upholding delegation to the Sentencing Commission to
promulgate then-binding Sentencing Guidelines establishing the permissible
sentences for federal crimes); *Touby v. United States*, 500 U.S. 160, 165–67
(1991) (upholding delegation to the Attorney General to designate controlled
substances on a temporary basis, resulting in criminal penalties for
unauthorized manufacture, possession, or distribution of such substances).

In *United States v. Cassiagnol*, 420 F.2d 868, 876 (4th Cir. 1970), the
defendant challenged 40 U.S.C. § 318 (now § 1315), which authorizes the
Administrator of General Services to establish rules and regulations "as to
government property under its charge and control." *Id*. at 876. In rejecting the
defendant's nondelegation argument, the Fourth Circuit explained:

14

It is clear that Congress has constitutional power to "make all needful Rules and Regulations" concerning government property. Under such constitutional authority Congress delegated the authority to make regulations governing the operation, maintenance and use of government property to the GSA Administrator. Such authority necessarily had to be somewhat general in nature due to the vast number and great variety of properties entrusted to the charge and control of GSA, but this authority, contrary to appellants' contention, was not unlimited. GSA was given physical control and custody of a wide variety of public buildings in and out of the District of Columbia, including courthouses, customhouses, barge offices and office buildings. The function exercised in relation to such property is essentially one of maintaining, operating and protecting buildings and grounds for the uses for which they have been designated. Congress fixes the governmental purpose of a particular piece of property and limits the GSA Administrator's power to make 'needful rules and regulations' to maintain and protect such property and ensure its use for the authorized purpose. To require Congress specifically to enumerate GSA's duties would be to require the impractical, if not the impossible. Similar grants of general regulatory and administrative authority are common, *e.g.*, national parks, national military parks and battlefields, national forests, watersheds, etc. It is reasonable and constitutional to delegate to the agency charged with maintenance and protection of government property the right to fix the hours and places where the property may be entered by the public, as well as minimum acceptable conduct thereon, and to provide for the punishment of those violating such regulations.

*Id*. at 876–77 (footnotes omitted).

The Fourth Circuit and district courts in this Circuit continue to rely on *Cassiagnol* in rejecting nondelegation challenges. *See United States v. Moriello*, 980 F.3d 924, 932 (4th Cir. 2020); *United States v. Kittel*, 2021 WL 3823185, at *5 (D. Or. Aug. 26, 2021) (unpublished); *United States v. Mumford*, 2017 WL

652449, *4 (D. Or. Feb. 16, 2017) (unpublished); *United States v. Cruscial*, 2019 WL 1087150, at *3 n.3 (D. Or. Mar. 7, 2019) (unpublished).

"Only twice in this country's history (and that in a single year) has the Supreme Court found a delegation excessive ...." *Gundy*, 139 S. Ct. at 2129 (citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), and *Panama Refin. Co. v. Ryan*, 293 U.S. 388 (1935)) (other citations, quotations, and alterations omitted).

### 2.    Argument

The delegation at issue here satisfies all three factors identified by the Supreme Court in *American Power & Light*. Section 1733(a) provides that "the Secretary shall issue regulations necessary to implement the provisions of this Act with respect to the management, use, and protection of the public lands." 43 U.S.C. § 1733(a).

In Section 1733(a), Congress identified the Secretary of the Interior as the executive authorized to exercise the delegated authority, and specifically delineated the subject the Secretary is authorized to address: implementation of the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1701 *et seq.*

16

("FLPMA") with respect to the management, use, and protection of public lands.[5]

FLPMA sets the boundaries of the delegated authority. Congress granted the Secretary authority to promulgate and enforce regulations in order to facilitate her implementation of the mandate, set forth in FLPMA, to "manage the public lands under principles of multiple use and sustained yield," 43 U.S.C. § 1732(a), and "to prevent unnecessary or undue degradation of the lands," *id.* § 1732(b). Congress also defined the terms "multiple use" and "sustained yield," *id.* § 1702(c), (h), thereby providing significant detail as to how the Secretary, through the BLM, should execute Section 1732(a)'s broad mandate.

Other FLPMA provisions also delineate the boundaries of the mandate set out in 43 U.S.C. § 1732. Section 1712(c) sets the criteria that the BLM must account for in the specific context of developing and revising land use plans, *id.* § 1712(c), and Section 1761 identifies the purposes for which the BLM may

---

[5]    The taillight regulations at issue in this case, 43 C.F.R. §§ 8341.1(f)(5) and (h), were promulgated by the Secretary of the Interior pursuant to the grant of authority in Section 1733(a). Under the district court's reasoning that Section 1733 is unconstitutional, *every* regulation issued by the Secretary pursuant to that section is invalid. The district court's order dismissing the case samples some of the regulations which, under the court's reasoning, would now be invalid. ER-16.

17

issue rights-of-way, all of which further refines and directs the BLM's implementation of Section 1732(a).

Moreover, Congress, in passing FLPMA, made clear the "general policy" that the BLM was to follow in exercising its authority under the statute, including Section 1733(a). *See Gundy*, 139 S. Ct. at 2129. In addition to the statutory direction in Sections 1732 and 1712, Section 1701 provides guidance as it "declares … the policy of the United States" with respect to the public lands. 43 U.S.C. § 1701. Among other things, it provides--consistent with Section 1732(a)—that the public lands' "management be on the basis of multiple use and sustained yield," § 1701(a)(7), and "in a manner which recognizes the Nation's need for domestic sources of minerals, food, timber, and fiber from the public lands." § 1701(a)(12). It additionally articulates federal policy that "the public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values," including "preserv[ing] and protect[ing] certain public lands in their natural condition," "provid[ing] food and habitat for fish and wildlife and domestic animals, and "provid[ing] for outdoor recreation and human occupancy and use." § 1701(a)(8).

Regulations issued pursuant to Section 1733(a) with respect to the management, use, and protection of the public lands must further FLPMA's statutory commands to manage under principles of multiple use and sustained yield and to prevent unnecessary or undue degradation and are guided by FLPMA's policy declarations. Taking those provisions together, it is clear that Congress, through FLPMA, has provided an intelligible principle limiting the Secretary's authority. Accordingly, Section 1733(a) constitutes a permissible delegation of authority and falls squarely within the bounds of similar, previously upheld delegations cited above.

Courts have rejected unlawful delegation claims seeking to invalidate similar statutes delegating authority to the Secretary of Agriculture concerning National Forests, 16 U.S.C. § 551, and to the Secretary of the Interior concerning National Parks, 16 U.S.C. § 3 (repealed).

For example, in *United States v. Grimaud*, 220 U.S. 506 (1911), individuals charged with grazing animals in noncompliance with United States Forest Service regulations in a National Forest argued that the authority delegated to the Secretary of Agriculture was an unlawful delegation of legislative power. The Supreme Court rejected that argument, stating,

> In the nature of things it was impracticable for Congress to provide general regulations for these various and varying details of management. Each reservation had its peculiar and special features; and in authorizing the Secretary of Agriculture to meet these local

19

> conditions, Congress was merely conferring administrative functions upon an agent, and not delegating to him legislative power.

*Id.* at 516. It further explained,

> The Secretary of Agriculture could not make rules and regulations for any and every purpose… [The rules and regulations at issue here] all relate to matters clearly indicated and authorized by Congress. The subjects as to which the Secretary can regulate are defined. The lands are set apart as a forest reserve. He is required to make provision to protect them from depredations and from harmful uses. He is authorized "to regulate the occupancy and use and to preserve the forests from destruction." A violation of reasonable rules regulating the use and occupancy of the property is made a crime, not by the Secretary, but by Congress. The statute, not the Secretary, fixes the penalty.

*Id.* at 522 (citation omitted).

Likewise, in *United States v. Brown*, 552 F.2d 817 (8th Cir. 1977), the Eighth Circuit upheld conviction of a defendant who possessed a loaded firearm and hunted in a National Park in violation of Interior regulations, despite a constitutional challenge. There, the Eighth Circuit held that Congress validly delegated authority to the Secretary of the Interior pursuant to the property clause. *See id.* at 822–23 and n. 8 ("The National Park Service Act allows the Secretary of the Interior to promulgate 'such rules and regulations as he may deem necessary or proper for the use and management of the parks.' 16 U.S.C. § 3 [[repealed]]. The regulations prohibiting hunting and possession of a loaded firearm were promulgated pursuant to that authority, 36 C.F.R. §§

2.11 and 2.32, and are valid prescriptions designed to promote the purposes of the federal lands within the national park. Under the Supremacy Clause the federal law overrides the conflicting state law allowing hunting within the park.") (footnotes omitted).[6]

In assessing the validity of Congress's delegation to the Secretary here, the district court purported to apply the *Gundy* intelligible principle test, holding:

> The statute does not provide any guidance or restraint as to when the Secretary of the Interior shall promulgate rules. Instead, the Secretary of the Interior can promulgate rules whenever it is "necessary." There is no limiting language to provide the Secretary of the Interior with any considerations regarding when regulations are necessary. Instead, the words "management, use, and protection" serve as the limiting words. But, the words "management, use, and protection" do not limit the authority to

---

[6]    The grant of authority at issue in *Brown*, 16 U.S.C. § 3, has since been repealed and replaced by other statutes. But *Brown* remains persuasive because it holds that the broad language in that statute did not violate the non-delegation doctrine. The statute read in part:

> The Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks, monuments, and reservations under the jurisdiction of the National Park Service, and any violation of any of the rules and regulations authorized by this section and sections 1, 2, and 4 of this title shall be punished by a fine of not more than $500 or imprisonment for not exceeding six months, or both, and be adjudged to pay all cost of the proceedings.

16 U.S.C. § 3 (repealed).

promulgate regulations because those words cover almost all conduct on public lands. That language has allowed the Secretary of the Interior to promulgate a plethora of rules from housing policies, to traffic laws, to firearms regulations, to mining rules, to agriculture certifications. That means that the Secretary of the Interior has unfettered legislative authority to promulgate rules for over 48 million acres of land, which is 68% of the state of Nevada.

ER-14–15 (citations and footnotes omitted).

In reaching this conclusion, the district court here relied on Justice Gorsuch's concurrence in *Gundy* and Judge Tymkovich's dissent in *Aposhian v. Wilkinson*, 989 F.3d 890, 900 (10th Cir. 2021), ER 16, neither of which control, and both of which construed different statutes.[7]

The district court made no meaningful attempt to distinguish *Cassiagnol* based on the statutory language or application of the nondelegation doctrine.

---

[7]    The district court also cited *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 461 (5th Cir. 2022), stating, "Congress gave the SEC a significant legislative power by failing to provide it with an intelligible principle to guide its use of the delegated power." ER-13 (parentheses omitted). That case likewise does not support the conclusion that the statute at issue here lacks an intelligible principle. In *Jarkesy*, the Fifth Circuit held that Congress "effectively gave the SEC the power to decide which defendants should receive certain legal processes (those accompanying Article III proceedings) and which should not, [but] [s]uch a decision—to assign certain actions to agency adjudication—is a power that Congress uniquely possesses." *Id.* at 462. The statute at issue here, 43 U.S.C. § 1733, does no such thing. Moreover, on June 23, 2023, the Supreme Court granted the SEC's cert. petition, and the case is still pending there. *See Sec. & Exch. Comm'n v. Jarkesy*, 143 S. Ct. 2688 (2023) (cert. grant).

ER-18–19. Rather, the district court suggested that citizens have inherently more rights on "public" land compared to government-owned buildings and thus the management of BLM land and GSA buildings are different. ER-22. But FLPMA defines "public lands" as "any land and interest in land owned by the United States within the several States and administered by the Secretary of the Interior through the Bureau of Land Management." 43 U.S.C. § 1702(e). Individuals may do certain things on BLM-managed land that they cannot do in GSA buildings because then BLM allows them to do so consistent with Congress's direction. For instance, while the district court pointed to the fact that citizens can drive off-road vehicles on BLM-managed land but not on GSA property, ER-16, the BLM can—and does—regulate the driving of off-road vehicles on its land. *See, e.g.,* 43 C.F.R. § 8341.1 (setting forth requirements for off-road vehicle drivers and prohibiting driving on "areas and trails closed to off-road vehicle use").

The district court also reasoned that the BLM manages a greater amount of land than GSA. ER-19. To the extent that distinction has any logical relevance, it would place Congress's grant of authority to the Secretary on *firmer* footing: if the amount of property managed by the GSA supported a broad delegation of authority, the far greater amount of land administered by the BLM—and the fact that the BLM is required to administer that land under

23

a wide-ranging, "multiple use" mission, 43 U.S.C. § 1732(a) —supports an even broader delegation. The grant of authority from Congress to the BLM is necessarily broad. The court erred by rejecting this argument. ER-19.

In parts of its opinion, the district court also incorrectly suggested that the nondelegation problem hinged on the Secretary's authority to issue regulations carrying criminal penalties and that the criminal context requires or justifies imposing more stringent limits on Congress's authority to delegate. ER-16–17. But the Supreme Court has long rejected the proposition that Congress lacks Article I authority to authorize Executive agencies to issue regulations, the violation of which Congress itself makes a crime. *See, e.g.*, *Grimaud*, 220 U.S. at 522 ("[a] violation of reasonable rules regulating the use and occupancy of the property is made a crime, not by the Secretary, but by Congress. The statute, not the Secretary, fixes the penalty."); *Loving v. United States*, 517 U.S. 748, 768 (1996) ("We have upheld delegations whereby the Executive … defines by regulation what conduct will be criminal, so long as Congress makes the violation of regulations a criminal offense and fixes the punishment, and the regulations 'confine themselves within the field covered by the statute.'") (quoting *Grimaud*, 220 U.S. at 518) (brackets omitted).

In short, this is not a case "in which applying the rarely invoked non-delegation doctrine would be appropriate." *Melgar-Diaz*, 2 F.4th at 1267; *see id.*

24

1266–67 ("[p]revailing on a non-delegation challenge is thus a tall order" and the standards for a permissible delegation are "not demanding"). This Court should reverse the district court's holding with respect to the nondelegation doctrine, and reinstate Count 3.

## VIII.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court reverse the district court's order dismissing Count 3.

Dated this 17th day of November, 2023.

JASON M. FRIERSON
United States Attorney

ROBERT L. ELLMAN
Appellate Chief

 s/ *Adam Flake*
ADAM FLAKE
Assistant United States Attorney
501 Las Vegas Blvd S. Ste. 1100
Las Vegas, NV 89101
(702) 388-6336
*Attorneys for the United States*

# IX.

## STATEMENT OF RELATED CASES

The government is not aware of any related cases.

Dated this 17th day of November, 2023.


s/ *Adam Flake*
ADAM FLAKE
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. P. 32(a)(5), (6) AND CIRCUIT RULE 32-1

I hereby certify that:

Pursuant to Fed. R. App. P. 32(a)(5) and (6) and Ninth Circuit Rule 32-1, the attached **GOVERNMENT'S OPENING BRIEF** is proportionately spaced, has a typeface of 14 points, and contains 5,625 words, excluding the portions exempted by Fed. R. App. P. 32(f).

Dated this 17th day of November 2023.

*s/ Adam Flake*
ADAM FLAKE
Assistant United States Attorney