CASE NO. 23-991

═══════════════════════════════════

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

GREGORY PHEASANT,

*Defendant-Appellee*.

───────────────────────

*On Appeal from the United States District Court*
*for the District of Nevada, No. 3:21-cr-24 (Honorable Robert C. Jones)*

───────────────────────

## BRIEF OF THE CATO INSTITUTE AS *AMICUS CURIAE*
## IN SUPPORT OF DEFENDANT-APPELLEE

───────────────────────

Thomas Berry
   *Counsel of Record*
Alexander R. Khoury
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
(202) 842-0200
tberry@cato.org

April 24, 2024

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

The Cato Institute is a nonprofit entity operating under § 501(c)(3) of the Internal Revenue Code. *Amicus* is not a subsidiary or affiliate of any publicly owned corporation, and none issue shares of stock. No publicly held corporation has a direct financial interest in the outcome of this litigation due to the *amicus*'s participation.

## TABLE OF CONTENTS

**Page**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ..................................... i

TABLE OF AUTHORITIES ................................................................ iii

INTEREST OF *AMICUS CURIAE* ........................................................1

INTRODUCTION AND  SUMMARY OF THE ARGUMENT ...........................1

ARGUMENT....................................................................................4

    I.   THIS COURT'S REVIEW OF VAGUE CRIMINAL STATUTES SHOULD BE UNIFORM ACROSS SEPARATION-OF-POWERS DOCTRINES. ................................................................4

    II.  THE ACT VIOLATES THE NONDELEGATION DOCTRINE UNDER A HEIGHTENED ANALYSIS AKIN TO VAGUENESS. .........13

CONCLUSION ...............................................................................21

CERTIFICATE OF COMPLIANCE....................................................22

CERTIFICATE OF SERVICE............................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A. L. A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)...............17

*Am. Power & Light Co. v. SEC*, 329 U.S. 90 (1946) ............................................. 5

*Coates v. Cincinnati*, 402 U.S. 611 (1971)...........................................................11

*Fahey v. Mallonee*, 332 U.S. 245 (1947)............................................................. 8

*Gundy v. United States*, 139 S. Ct. 2116 (2019) .............................................passim

*Indus. Union Dep't, AFL-CIO v. API*, 448 U.S. 607 (1980) ...............................17

*Interstate Circuit v. Dallas*, 390 U.S. 676 (1968)..........................................passim

*J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928) ......................4, 5

*Joseph Burstyn v. Wilson*, 343 U.S. 495 (1952) ................................................19

*Kleppe v. New Mexico*, 426 U.S. 529 (1976)........................................................15

*Kolender v. Lawson*, 461 U.S. 352 (1983).........................................................8, 9

*Mistretta v. United States*, 488 U.S. 361 (1989) ...............................................4, 8

*Sessions v. Dimaya*, 584 U.S. 148 (2018)........................................................8, 12

*Touby v. United States*, 500 U.S. 160 (1991)................................................7, 12, 13

*United States v. Davis*, 139 S. Ct. 2319 (2019) ..........................................7, 8, 20

*United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32 (1812) ....................20

*United States v. Nichols*, 784 F.3d 666 (10th Cir. 2015) ................................7, 12

*United States v. Pheasant*, No. 3:21-CR-00024-RCJ-CLB, 2023 U.S. Dist. LEXIS 72572 (D. Nev. Apr. 26, 2023).................................................7, 15, 20

*Vill. of Hoffman Ests. v. The Flipside, Hoffman Ests.*, 455 US 489 (1982)...........10

*Wayman v. Southard*, 23 U.S. 1, 10 Wheat. 1 (1825) ........................................ 4

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001)...............................6, 10, 12

## Statutes

43 U.S.C. § 1701.................................................................................................16

43 U.S.C. § 1701(a) ................................................................................14, 15, 17

43 U.S.C. § 1733(a) ................................................................................14, 15, 16

**Other Authorities**

Jason Iuliano & Keith E. Whittington, *The Nondelegation Doctrine: Alive and Well*, 93 NOTRE DAME L. REV. 619 (2017) ........................................................ 6

Rachel E. Barkow, *Separation of Powers and the Criminal Law*, 58 STAN. L. REV. 989 (2006) ..................................................................................13

Todd Gaziano & Ethan Blevins, *The Nondelegation Test Hiding in Plain Sight: The Void-for-Vagueness Standard Gets the Job Done, in* THE ADMINISTRATIVE STATE BEFORE THE SUPREME COURT (Wallison & Yoo eds., AEI Press., 2022) ........................................................................ 9

**Regulations**

42 C.F.R. § 8365.1-4(a)(4) ............................................................................ 2

43 C.F.R. § 3715.8-1 ..................................................................................20

43 C.F.R. § 5511.1-1 ..................................................................................17

43 C.F.R. § 8341.1(f)(5) ............................................................................... 2

43 C.F.R. § 9268.3(a)(iv) .............................................................................20

43 C.F.R. § 9268.3(d) .................................................................................17

43 C.F.R. § 9269.3-5..............................................................................17, 20

65 Fed. Reg. 69781-03(4)(e) (Nov. 20, 2000) ............................................20

**Constitutional Provisions**

U.S. CONST. art. I, § 1 ................................................................................. 4

U.S. CONST. art. IV, § 3 .............................................................................15

## INTEREST OF *AMICUS CURIAE*[1]

The Cato Institute is a nonpartisan public policy research foundation founded in 1977 dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Robert A. Levy Center for Constitutional Studies helps restore the principles of constitutional government that are the foundation of liberty. Toward those ends, Cato publishes books and studies, conducts conferences, produces the annual *Cato Supreme Court Review*, and files *amicus* briefs.

This case interests Cato because the right to individual liberty is best preserved by a constitutionally constrained executive branch, consistent with the Framer's design. Specific to this case, *amicus* also has an interest in challenging government overreach in the criminal justice system, protecting the rule of law, and working to combat "overcriminalization."

## INTRODUCTION AND
## SUMMARY OF THE ARGUMENT

On the night of May 28, 2021, Gregory Pheasant was arrested for riding his dirt bike through Moon Rocks, Nevada, without a taillight. Moon Rocks is a section of federally owned public land managed by the Bureau of Land Management ("BLM"). BLM has the authority to promulgate regulations governing the land it

---

[1] Fed. R. App. P. 29 Statement: No counsel for either party authored this brief in whole or in part. No person or entity other than *amicus* made a monetary contribution to its preparation or submission. Pursuant to Ninth Circuit Local Rule 29-2(a), all parties have been notified and have consented to the filing of this brief.

manages via a subdelegation of authority from the Secretary of the Interior. The secretary's authority to issue regulations derives from the Federal Land Policy and Management Act of 1976 ("Act"). Claiming authority under the Act, BLM issued a rule requiring that all dirt bikes operating at night be affixed with a taillight, on pain of criminal penalty. 43 C.F.R. § 8341.1(f)(5). Pheasant was charged with violating BLM's taillight regulation, along with resisting the issuance of a citation, 42 C.F.R. § 8365.1-4(a)(4), and assault on a federal officer.

Pheasant moved to dismiss all three counts. In his defense, Pheasant argued that the charges for resisting a citation and a broken taillight were unconstitutional under the nondelegation doctrine. Pheasant maintained that the Act unconstitutionally delegated legislative authority to the secretary of the interior. As a consequence, he argued, neither the secretary nor BLM had authority to issue rules creating these crimes, and both the taillight and the resisting-a-citation regulations were void. The United States District Court for the District of Nevada agreed and dismissed the two counts against Pheasant on nondelegation grounds.

For the reasons Pheasant has explained, the district court correctly dismissed the charges against him on nondelegation grounds. *Amicus* writes separately to urge this Court to resolve a doctrinal inconsistency. Parties alleging a separation-of-powers challenge to overly vague criminal statutes risk facing the inconsistent

application of two separate standards of scrutiny that should be unified—vagueness review and the nondelegation doctrine's intelligible principle test.

Vagueness doctrine and the nondelegation doctrine share the same constitutional concern: delegations of authority to effectively create criminal laws. Both doctrines seek to prevent Congress from delegating away its lawmaking authority to other government actors charged with executing the law, namely judges, juries, police officers, prosecutors, and agencies. But while these doctrines share the same separation of powers concerns, they do not yet share the same legal standard. Parties bringing a nondelegation challenge under the intelligible principle test are less likely to prevail than those bringing a vagueness challenge. This distinction has no merit. But lower courts can help fix this imbalance. The Supreme Court has left open whether a heightened standard of scrutiny applies to nondelegation challenges in the *criminal* context. This Court should take the opportunity to clarify that, in the context of statutes delegating away criminal law-making authority, the same heightened standard applied in vagueness challenges also applies in nondelegation challenges.

Under a unified separation-of-powers standard that subjects vagueness and nondelegation challenges to equivalent scrutiny, this is an easy case and Pheasant's charges for violating two regulatory crimes should be dismissed. The secretary of the interior has been granted nearly unfettered authority to issue regulatory crimes

for federally owned public lands. This tremendous grant of power far exceeds anything the courts have upheld under vagueness precedents. The Act's creation of a one-man super legislator (the interior secretary) for federally owned public lands violates the separation of powers. The decision below should be affirmed.

## ARGUMENT

### I. THIS COURT'S REVIEW OF VAGUE CRIMINAL STATUTES SHOULD BE UNIFORM ACROSS SEPARATION-OF-POWERS DOCTRINES.

Article I of the Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1. Accompanying that power is a bar on its further delegation. *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality op.). Congress may not transfer to another branch "powers which are strictly and exclusively legislative." *Id.* (quoting *Wayman v. Southard*, 23 U.S. 1, 10 Wheat. 1, 42–43 (1825)). However, most legislation carries with it a degree of executive discretion. *Mistretta v. United States*, 488 U.S. 361, 417 (1989) (Scalia, J., dissenting). So long as another branch does not exceed that discretion, its actions are valid under the Constitution. *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 407 (1928). But Congress can only provide the executive (or judiciary) so much discretion without unconstitutionally delegating away its lawmaking power.

To police this line, the Supreme Court has adopted multiple doctrines that assure against improper delegations. *See Gundy*, 139 S. Ct. at 2141 (Gorsuch, J., dissenting) (discussing the Supreme Court's use of multiple doctrines to rein in delegations of legislative power). The principle that Congress may not delegate too much discretion to executive branch rulemakers is called the nondelegation doctrine. And the current test for whether a delegation has granted a rulemaker too much policymaking discretion is the "intelligible principle" test. Under this test, courts must determine whether Congress has set forth an "intelligible principle" to guide a rulemaker (often an executive agency) in setting rules and regulations consistent with Congress's policy objectives. *J. W. Hampton, Jr., & Co.*, 276 U.S. at 409. An intelligible principle must contain "boundaries on [an agency's] authority" and set forth a clear "general policy" for it to pursue. *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946).

Unfortunately, the intelligible principle test has evolved into an often too-permissive standard. *See Gundy*, 139 S. Ct. at 2141 (Gorsuch, J., dissenting). When the Supreme Court first articulated the phrase "intelligible principle," it did not intend to announce a new, more lenient standard. Originally, the Court simply meant to "explain the operation of … traditional [nondelegation] tests," not overrule them. *Id.* at 2139. As originally (and correctly) applied, the intelligible principle test allows for only three limited types of delegations. First, Congress may delegate the

responsibility for "fill[ing] up the details" of less-important statutory objectives, and only after Congress has set forth a clear and "controlling" general policy. *Id*. at 2136. Second, after prescribing rules governing private conduct, Congress "may make the application of that rule depend on executive fact-finding." *Id*. And finally, "Congress may assign the executive and judicial branches certain non-legislative responsibilities." *Id*. at 2137.

The Court's gradual departure from this original understanding of "intelligible principle" has been well documented. *See* Jason Iuliano & Keith E. Whittington*, The Nondelegation Doctrine: Alive and Well*, 93 NOTRE DAME L. REV. 619, 624–25 (2017). The Supreme Court has twice found that a statute lacked an intelligible principle—once where the statute "provided literally no guidance for the exercise of discretion," and again where the statute "conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001); *See also Gundy*, 139 S. Ct. at 2129 (plurality op.). But since then, the nondelegation doctrine has gone underenforced. *See* Iuliano & Whittington, *supra*, at 624.

Nevertheless, the statute at issue here fails even under the Supreme Court's current version of the intelligible principle test. As Pheasant argued below, the Act unconstitutionally granted the interior secretary legislative authority over federally

owned public land. The district court agreed, holding that the Act lacked an intelligible principle because it granted the secretary "unfettered" authority to issue regulations (including those backed by criminal penalty) without "provid[ing] any guidance or restraint as to when [he] shall promulgate rules." *United States v. Pheasant*, No. 3:21-CR-00024-RCJ-CLB, 2023 U.S. Dist. LEXIS 72572, at *14 (D. Nev. Apr. 26, 2023).

The district court's decision was correct. However, there is another path this Court could choose to affirm the judgment of the district court. Because this case concerns *criminal* regulations, this Court is not bound to apply the less-restrictive version of the intelligible principle test. This Court can and should apply an even stronger nondelegation test. The Supreme Court has suggested that "something more than an intelligible principle" may be required when Congress grants another branch the power to promulgate regulations enforced by *criminal* sanctions. *See Touby v. United States*, 500 U.S. 160, 165–66 (1991). And it is easy to see why. When it comes to legislative delegations, the Framers' attention to the separation of powers was chiefly driven by their fear of "endowing one set of hands with the power to create and enforce criminal sanctions." *United States v. Nichols*, 784 F.3d 666, 673 (10th Cir. 2015) (Gorsuch, J., dissenting). The Constitution authorizes only "the people's elected representatives … to 'make an act a crime.'" *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019). When Congress delegates away the power to create

new crimes, as opposed to the power to increase penalties under current law, it violates nondelegation principles. *See Mistretta*, 488 U.S. at 373 n.7 (discussing *Fahey v. Mallonee*, 332 U.S. 245, 249 (1947)); *Davis*, 139 S. Ct. at 2325 (explaining that the separation of powers prevents Congress from passing "vague statutes" that "hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges").

The concern that Congress could delegate away its crime-writing authority animates another doctrine—vagueness. Under the vagueness doctrine, courts will void criminal statutes that set standards insufficient to properly guide police officers, prosecutors, juries, and judges when enforcing the law. *See Sessions v. Dimaya*, 584 U.S. 148, 156 (2018). "In that sense, the doctrine is a corollary of the separation of powers—requiring that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not." *Id.*; *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983) ("[T]he more important aspect of the vagueness doctrine 'is not actual notice, … but the requirement that a legislature establish minimal guidelines to govern law enforcement.'").

Under a vagueness analysis, courts generally ask two questions: (1) whether the statute defines sanctionable conduct with "sufficient definiteness" so that "ordinary people can understand what conduct is prohibited," and (2) whether the statue defines that conduct "in a manner that does not encourage arbitrary and

discriminatory enforcement." *Kolender*, 461 U.S. at 357. Or, put another way, "legislation must not be so vague, the language so loose, as to leave to those who have to apply it too wide a discretion." *Interstate Circuit v. Dallas*, 390 U.S. 676, 684 (1968). This language, in sum, amounts to an even stricter form of what the intelligible principle test requires in the rulemaking context—more definitive guidelines on how prosecutors, police, and judges, may enforce criminal laws. And overall, the strictness of the vagueness standard is demonstrated by its statistics. Courts have struck down many more laws as impermissibly vague than as lacking an intelligible principle. *See* Todd Gaziano & Ethan Blevins, *The Nondelegation Test Hiding in Plain Sight: The Void-for-Vagueness Standard Gets the Job Done,* in THE ADMINISTRATIVE STATE BEFORE THE SUPREME COURT 45, 56–57 (Wallison & Yoo eds., AEI Press., 2022); *Gundy*, 139 S. Ct. at 2142 (Gorsuch, J., dissenting) (discussing the Supreme Court's use of vagueness doctrine instead of a forceful intelligible principle standard to police broad delegations).

Courts have traditionally applied the vagueness doctrine in cases against individual agents of the state (police, judges, prosecutors, and juries). However, vagueness principles are not limited exclusively to such cases. Courts have employed the vagueness doctrine to strike down grants of criminal law-making power to municipal administrative boards. *See e.g.*, *Interstate Circuit*, 390 U.S. at

676 (striking down as impermissibly vague a statute that delegated the creation of movie rating standards, backed by criminal penalty, to an administrative body).

Nonetheless, the applicability of the vagueness doctrine in the rulemaking context remains unsettled. Certain courts have suggested that vagueness challenges may not be brought against federal administrative agency rulemaking. *Compare Vill. of Hoffman Ests. v. The Flipside, Hoffman Ests.*, 455 US 489, 504 (1982) (rejecting a vagueness challenge to a statute that prohibited the unlicensed sale of items "designed or marketed for" illegal drug use in part because regulations had clarified "a standard with an otherwise uncertain scope"), *with Whitman*, 531 U.S. at 472–73 (holding, in the context of an intelligible principle nondelegation challenge, that an agency cannot save an unconstitutional grant of legislative authority by clarifying that authority through regulation).

Given that the vagueness and nondelegation doctrines share the same separation of powers concerns, it would be curious if they did not share the same standard when applied to criminal statutes. A defendant's relief should not be arbitrarily contingent on *where* the excessive discretion has been vested and thus which doctrine the defendant may invoke.

To provide an example, if Congress were to make it a crime to "behave on federal property in a manner annoying to persons passing by," Supreme Court precedent would demand that this law be struck down as impermissibly vague. *See*

*Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) (holding that an ordinance making it a criminal offense for three or more persons to assemble on a sidewalk and "annoy" any passersby was unconstitutionally vague). Such a statute would vest far too much discretion in the officers charged with enforcing the law. But if Congress further added that "the Attorney General shall have the power to pass regulations that specify what behavior is annoying," a court might uphold the law under a nondelegation challenge if it applied the intelligible principle test. But since the first version of this hypothetical law violates the separation of powers under the vagueness doctrine by giving too much discretion to *police and prosecutors*, the latter should also violate the separation of powers under the nondelegation doctrine by giving too much discretion to *rulemakers*. Different standards mean that vague laws imposing criminal sanctions through federal regulators will be scrutinized less than vague laws enforced by police and prosecutors, granting Congress a backdoor by which they may grant too much criminal law-making power to the executive branch.

This imbalance is particularly pernicious because the latter hypothetical delegation to the attorney general presents a *greater* danger to individual liberty. The attorney general has more power over individual citizens than any prosecutor or police officer, because he or she may enact regulations that govern universally. Given this context, it is particularly perplexing that a lower standard of judicial

11

scrutiny would apply. If anything, greater scrutiny—not less—should accompany grants of significant power backed by significant consequences. *See Whitman*, 531 U.S. at 475 ("the degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred"); *see also Dimaya*, 584 U.S. at 157 (applying the vagueness standard to a non-criminal immigration statute because it nonetheless presented the plaintiff with "a particularly severe penalty").

In the context of statutes delegating criminal law-writing authority to other branches, courts should apply the same strict standard irrespective of the delegee. This Court would resolve that doctrinal inconsistency by applying the equivalent of vagueness scrutiny for criminal statutes analyzed under nondelegation. Under that analysis, Congress would no longer escape heightened review by delegating criminal law-writing power to executive agencies. And that test would squarely fit within the framework the Supreme Court considered in *Touby*. 500 U.S. at 165–66 (holding that § 201(h) of the Controlled Substances Act "passed muster" even if greater congressional specificity is required in the criminal context). Otherwise, Congress would be permitted to streamline a process the Framers intended to slow down with multiple checks: "'The inefficiency associated with [the separation of powers] serves a valuable' liberty-preserving 'function, and, in the context of criminal law, no other mechanism provides a substitute.'" *Nichols*, 784 F.3d at 670 (Gorsuch, J.,

dissenting) (quoting Rachel E. Barkow, *Separation of Powers and the Criminal Law*, 58 STAN. L. REV. 989, 1011–17, 1031 (2006)).

The Supreme Court has not yet decided whether heightened scrutiny should apply when Congress grants another branch the power to promulgate regulations enforced by *criminal* sanctions. *Touby*, 500 U.S. at 165–66. But absent a definitive ruling to the contrary, this circuit should apply a heightened form of review equal to the scrutiny applied under vagueness review when a nondelegation case concerns an agency's power to write and enforce its own criminal law.

## II.   THE ACT VIOLATES THE NONDELEGATION DOCTRINE UNDER A HEIGHTENED ANALYSIS AKIN TO VAGUENESS.

When evaluating whether a statute violates the nondelegation doctrine, courts begin their review of the statute by discerning its meaning. *See Gundy*, 139 S. Ct. at 2123 (plurality op.) ("Only after a court has determined a challenged statute's meaning can it decide whether the law sufficiently guides executive discretion to accord with Article I."). Once a court interprets the statute, "it may find that the constitutional question all but answers itself." *Id*.

Under the Act, the secretary of the interior has broad powers to regulate federally managed public lands, and his regulations are backed by criminal penalty. The Act empowers the interior secretary to issue any regulations "necessary to implement the [Act's provisions] with respect to the management, use, and protection of the public lands, including the property located thereon." 43 U.S.C.

§ 1733(a). That section also provides that "any person who knowingly and willfully violates any such regulation … shall be fined no more than $1,000 or imprisoned no more than twelve months, or both." *Id*.

The Act sets forth a number of purposes that the secretary must pursue, along with some purported restraints on his ability to issue regulations. First, the secretary must consider "the views of the general public" before issuing "comprehensive rules and regulations."[2] 43 U.S.C. § 1701(a)(5). Second, the secretary must manage public lands in a manner that will

> protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values; that, where appropriate, will preserve and protect certain public lands in their natural condition; that will provide food and habitat for fish and wildlife and domestic animals; and that will provide for outdoor recreation and human occupancy and use.

*Id*. at § 1701(a)(8). Third, the secretary must manage public lands in a manner that "recognizes the Nation's need for domestic sources of minerals, food, timber, and

---

[2] Section 1701(a)(5) provides no meaningful restriction on the secretary's rulemaking power because the scope of what he may regulate is not limited by this provision. This provision provides only that the secretary must abide by a vague process of obtaining public comment before issuing regulation, without specifying what that process is. It does not place any substantive limitations on the content of a rule. *See* 43 U.S.C. § 1701(a)(5).

fiber from the public lands including implementation of the Mining and Minerals Policy Act of 1970." *Id*. at § 1701(a)(12).

In analyzing these provisions together, the district court determined that the Act granted the secretary "unfettered legislative authority" over federal public property without "provid[ing] any guidance or restraint as to when [he] shall promulgate rules." *Pheasant*, 2023 U.S. Dist. LEXIS 72572, at *14. The court further determined that, taken together, the Act's stated purposes enlarged, rather than limited, the secretary's power to issue regulations. *Id*. at *27.

The district court's understanding of the Act is correct. Congress has the power to "make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. CONST. art. IV, § 3. This authority grants Congress power over federally owned public land akin to the states' general police authority. *See Kleppe v. New Mexico*, 426 U.S. 529, 540 (1976). Section 1733 grants the secretary of the interior the ability to enact regulations under this authority. The secretary is thus empowered to regulate anything Congress could legislate concerning the administration of federally owned public lands.

To be sure, section 1701 purports to restrain the secretary's power to issue regulations. After all, the secretary purportedly may not issue regulations inconsistent with the purposes of the Act. *See* 43 U.S.C. § 1733(a). Yet in practice, any policy could be justified as consistent with the purposes of the Act. The Act's

stated purposes are so numerous and general that they do not restrict the secretary any more than if the Act had given him unbridled authority to promulgate regulations deemed "necessary" for overseeing public lands.

Consider the secretary's broad mandate under section 1701(a)(8). Under that provision, the Secretary has the flexibility to select from approximately 11 objectives to support the enactment of a new regulation. These objectives are as general as "provid[ing] for outdoor recreation" or protecting the "quality" of "scenic" resources. *Id*. Under this mandate, it is hard to imagine what regulations the secretary may not pursue. Even if the secretary enacts a regulation that seems opposed to one (or numerous) objective(s) under section 1701(a)(8), he may justify that regulation by pointing to another, contrary purpose in the same title.

For example, suppose the secretary wants to construct a recreation center atop a scenic lookout on federal land. That regulation would certainly "provide for outdoor recreation." But it might also destroy or diminish the land's scenic value. No matter, because the secretary has the power to enact the regulation irrespective of any adverse effects on other statutory purposes—that determination is wholly within the secretary's discretion. *See generally* 43 U.S.C. § 1701.

This issue is further compounded by section 1701(a)(12), which permits the secretary to promulgate regulations aimed at promoting resource extraction. However, each time the secretary does so, he contradicts the objectives outlined in

section 1701(a)(8). The delicate equilibrium between preserving the environment and extracting resources is precisely the sort of policy question Congress is expected to address. Yet, the Act remains silent on this tension, leaving the task of balancing these interests to the sole discretion of the secretary. *See id*. at §§ 1701(a)(8), (12). And the secretary, through BLM, has issued a plethora of regulations that directly implicate this tension. *See e.g.*, 43 C.F.R. §§ 5511.1-1, 9269.3-5 (criminalizing the unauthorized cutting of timber and setting strict guidelines on timber extraction); *id*. at 43 C.F.R. § 9268.3(d) (allowing for the temporary closure of public lands to further resource extraction, "prevent excessive erosion," or preserve "scientific values," among other regulatory objectives). In this way, the Act creates the "mirage" of congressional consensus, but in fact leaves a "politically divisive" yet "fundamental" purpose of the statute for the interior secretary to "hammer out." *Indus. Union Dep't, AFL-CIO v. API*, 448 U.S. 607, 681, 687 (1980) (Rehnquist, J., concurring).

Thus, the Act's many statutory purposes, combined with the lack of any statutory balancing, grants the secretary nearly unfettered discretion to issue regulations. The delegation lacks an "intelligible principle" according to *A. L. A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935). And it certainly exceeds any delegation the Supreme Court has been willing to uphold under its vagueness precedents. A statute that granted police officers on federal land the

power to arrest anyone taking any action detrimental to any of the statutory goals listed in section 1701 would be easily struck down under a vagueness challenge. This case would thus be all the more easy if this Court applies that same higher standard.

The Supreme Court's vagueness precedents explain why laws providing discretion comparable to what the Act provides vest far too much discretion in executive branch actors. In *Interstate Circuit v. Dallas*, the Supreme Court struck down an obscenity ordinance that forbade movie theater owners from admitting minors to movies judged "not suitable for young persons" by the city's Motion Picture Classification Board. 390 U.S. 676 (1968). The board was instructed to rate movies based on whether they (1) contained violent scenes "likely to incite or encourage crime or delinquency on the part of young persons" or, (2) contained any sexual scenes "likely to incite or encourage delinquency or sexual promiscuity on the part of young persons or to appeal to their prurient interest." *Id*. at 681. If a theater showed a movie to a minor that the board had determined was "not suitable for young persons," the theater was subject to misdemeanor penalties. *Id*. at 680.

This ordinance, the Court explained, was "so vague" and "so loose" that it left "the censor . . . adrift upon a boundless sea," granting the board wide discretion to issue regulations in accordance with its beliefs, rather than issuing "regulation by law." *Id*. at 684–85. The Court also held that granting an administrative board such

18

broad powers posed another concern: vague laws shield administrative agencies from judicial review. *Id*. at 685 ("where licensing is rested, in the first instance, in an administrative agency, the available judicial review is in effect rendered inoperative [by vagueness.]" (quoting *Joseph Burstyn v. Wilson*, 343 U.S. 495, 532 (1952))). "Thus, to the extent that vague standards do not sufficiently guide the censor, the problem is not cured merely by affording de novo judicial review." *Id*.

The Act exemplifies the same unbounded discretion that led the Supreme Court to strike down the obscenity ordinance in *Dallas*. Like the motion picture board's movie classifications, the secretary's regulations are backed by criminal penalty. However, the legislative authority vested in the interior secretary far exceeds the authority of the board. The board only determined what movies triggered the obscenity ordinance. But under the Act, the secretary's authority is not confined to deciding the applicability of existing standards to specific situations; it extends much further than mere line-drawing. Rather, the secretary is empowered to create new laws (regulatory crimes) that dictate future behavior. And while the Act imposes restrictions on the extent of penalties for violators, the secretary still determines what those violations are.

A quick glance at the Code of Federal Regulations reveals the extent of the secretary's rulemaking authority under the Act. Pursuant to section 1733(a), the BLM (exercising the secretary's delegated power) has created what amounts to its

own criminal code governing public lands. *See e.g.*, 43 C.F.R. § 9268.3(a)(iv) (a prohibition on operating an off-road vehicle without proper "registration"); *Id.* at § 9269.3-5(b)(iii) (a prohibition on "permits secured by fraud"); *Id.* at § 3715.8-1 (a prohibition on making false statements to BLM officials); 65 Fed. Reg. 69781-03(4)(e) (Nov. 20, 2000) (a prohibition on shooting firearms in particular areas near Carson City). Put simply, under the standard of scrutiny the Supreme Court has applied in vagueness doctrine cases, this delegation of criminal law-writing authority unconstitutionally violates the separation of powers. *See Davis*, 139 S. Ct. at 2325 ("[o]nly the people's elected representatives in the legislature are authorized to 'make an act a crime'" (quoting *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 33 (1812)).

But the Act's breadth lies not just in the range of conduct the secretary may regulate, but also from the wide sweep of those regulations' applicability. Under the Act, the secretary may issue regulations for over 48 million acres of land in the state of Nevada (244 million acres nationwide), which amounts to 63% of the state's total landmass. *Pheasant*, U.S. Dist. LEXIS 72572, at *19. This means that, on a member per acre basis, the secretary of the interior possesses more geographic lawmaking power than either Congress or the Nevada state legislature.

The secretary of the interior thus functions as a one-man super legislature, wielding Congress's broad police powers over federally managed public lands solely

based on personal convictions and judgments, rather than enacting regulations determined strictly "by law." *Interstate Circuit*, 390 U.S. at 685. Even under the intelligible principle standard, the Act cannot be said to adequately set forth a discernable congressional policy or set reasonable restraints upon the secretary. And certainly, by any heightened standard that should apply in the context of criminal statutes, the Act must also fail for lack of adequate definitiveness. For these reasons, the district court was correct to dismiss the counts against Pheasant related to his alleged regulatory crimes.

## CONCLUSION

For the foregoing reasons, as well as those presented by Defendant-Appellee, this Court should uphold the district court's ruling.

Respectfully submitted,

DATED: April 24, 2024                   */s/*    Thomas A. Berry

Thomas A. Berry
  *Counsel of Record*
Alexander R. Khoury
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
(202) 842-0200
tberry@cato.org

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of 9th Cir. R. 29(a)(2) because it contains 4,796 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in Times New Roman, 14-point font.

/s/ Thomas A. Berry

April 24, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court, who will enter it into the CM/ECF system, which will send a notification of such filing to the appropriate counsel.

/s/ Thomas A. Berry

April 24, 2024