No. 23-991

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff – Appellant*,

v.

GREGORY W. PHEASANT,

*Defendant – Appellee*.

On Appeal from the United States District Court
for the District of Nevada
No. 3:21-cr-24
Hon. Robert C. Jones

_____

## BRIEF OF *AMICUS CURIAE* AMERICANS FOR PROSPERITY
## FOUNDATION IN SUPPORT OF DEFENDANT – APPELLEE

_____

Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
571.329.4529
mpepson@afphq.org

April 25, 2024                    Attorney for *Amicus Curiae*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* Americans for Prosperity Foundation is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.................................i

TABLE OF CONTENTS.................................................................ii

TABLE OF AUTHORITIES .........................................................iii

INTEREST OF *AMICUS CURIAE*..................................................1

SUMMARY OF ARGUMENT ........................................................1

ARGUMENT ...........................................................................3

    I.   The Separation of Powers Protects Liberty .................................3

    II.  The Constitution Bars Congress From Transferring Legislative Power to Other Entities ...........................................................................5

    III. Section 1733(a) Unconstitutionally Transfers Legislative Power to BLM.8

        A.  Section 1733(a) Grants BLM Sweeping Crime-Writing Powers...........8

        B.  As an Originalist Matter, 43 U.S.C. § 1733(a) Violates Article I's Vesting Clause ...............................................................................12

        C.  Section 1733(a) Lacks an Intelligible Principle .....................................15

        D.  The Government's Rummaging in Other Provisions for an Intelligible Principle Is Unavailing.................................................................20

    IV. Policy Arguments Against Requiring Congress to Do Its Job Are Misplaced and Cannot Justify Ignoring the Constitution's Demands .........................25

CONCLUSION.........................................................................26

CERTIFICATE OF COMPLIANCE.................................................27

CERTIFICATE OF SERVICE .......................................................28

ii

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*A.L.A. Schechter Poultry Corp. v. United States*,
    295 U.S. 495 (1935)..................................................................12, 19, 23

*Allstates Refractory Contractors, LLC v. Su*,
    79 F.4th 755 (6th Cir. 2023) ..................................3, 14, 16, 18

*Aposhian v. Wilkinson*,
    989 F.3d 890 (10th Cir. 2021) .......................................................7

*Biden v. Nebraska*,
    143 S. Ct. 2355 (2023).....................................................................1

*Cargill v. Garland*,
    57 F.4th 447 (5th Cir. 2023) .........................................................6

*Carter v. Welles-Bowen Realty, Inc.*,
    736 F.3d 722 (6th Cir. 2013) ......................................................18

*Case of Proclamations*,
    77 Eng. Rep. 1352 (K.B. 1611) ...................................................7

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021).....................................................................4

*Consumers' Research v. FCC*,
    88 F.4th 917 (11th Cir. 2023) ......................2, 12, 14, 15, 21

*Dep't of Transp. v. Ass'n of Am. R.R.*,
    575 U.S. 43 (2015)......................................................5, 12, 14

*Edmo v. Corizon, Inc.*,
    949 F.3d 489 (9th Cir. 2020) ......................................................16

*Fahey v. Mallonee*,
    332 U.S. 245 (1947).......................................................................19

*Guedes v. BATFE*,
    66 F.4th 1019 (D.C. Cir. 2023) ...................................................7

*Gundy v. United States*,
139 S. Ct. 2116 (2019)................................................................6, 12, 13, 14, 19

*Gun Owners of Am., Inc. v. Garland*,
19 F.4th 890 (6th Cir. 2021) ....................................................................8

*Immigration & Naturalization Service v. Chadha*,
462 U.S. 919 (1983)..............................................................................5, 10

*Jarkesy v. SEC*,
34 F.4th 446 (5th Cir. 2022) ..................................................................19

*Jennings v. Rodriguez*,
583 U.S. 281 (2018)................................................................................25

*J.W. Hampton, Jr. & Co. v. United States*,
276 U.S. 394 (1928)..........................................................................14, 16

*Kleppe v. New Mexico*,
426 U.S. 529 (1976) ................................................................................6

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
140 S. Ct. 2367 (2020)............................................................................25

*Loving v. United States*,
517 U.S. 748 (1996)..............................................................................5, 6

*Marshall Field & Co. v. Clark*,
143 U.S. 649 (1892) ................................................................................6

*Michigan v. EPA*,
576 U.S. 743 (2015)................................................................................15

*Mistretta v. United States*,
488 U.S. 361 (1989)................................................................................12

*Morrison v. Olson*,
487 U.S. 654 (1988)..............................................................................1, 4

*Myers v. United States*,
272 U.S. 52 (1926) ..................................................................................4

*National Labor Relations Board v. Canning,*
    573 U.S. 513 (2014)...................................................................3

*NFIB v. OSHA,*
    595 U.S. 109 (2022)...................................................................5

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004)................................................................11, 17

*Or. Nat. Desert Ass'n v. BLM,*
    625 F.3d 1092 (9th Cir. 2010) ...................................................9

*Panama Ref. Co. v. Ryan,*
    293 U.S. 388 (1935)..............................................17, 18, 19, 23, 24

*Perez v. Mortg. Bankers Ass'n,*
    575 U.S. 92 (2015)...................................................................5

*Seila Law LLC v. Consumer Financial Protection Bureau,*
    140 S. Ct. 2183 (2020).........................................................4, 25

*State of W.Va. v. Dep't of the Treasury,*
    59 F.4th 1124 (11th Cir. 2023) .............................................24, 25

*Synar v. United States,*
    626 F. Supp. 1374 (D.C. Cir. 1986)............................................18

*Texas v. Rettig,*
    993 F.3d 408 (5th Cir. 2021) ...........................................5, 14, 16

*Tiger Lily, LLC v. HUD,*
    5 F.4th 666 (6th Cir. 2021) ...............................................14, 25

*Touby v. United States,*
    500 U.S. 160 (1991)..............................................................6, 7

*United States v. Davis,*
    139 S. Ct. 2319 (2019)..............................................................8

*United States v. Evans,*
    333 U.S. 483 (1948)................................................................13

*United States v. Henderson*,
    243 F.3d 1168 (9th Cir. 2001) ........................................................ 10

*United States v. Hudson & Goodwin*,
    11 U.S. (7 Cranch) 32 (1812) ........................................................ 8

*United States v. Melgar-Diaz*,
    2 F.4th 1263 (9th Cir. 2021) ................................................... 16, 18

*United States v. Motamedi*,
    No. 20-10364, 2022 WL 101951 (9th Cir. Jan. 11, 2022) ................. 18

*United States v. Nichols*,
    784 F.3d 666 (10th Cir. 2015) ............................ 2, 5, 7, 8, 12, 18, 23

*United States v. Rife*,
    33 F.4th 838 (6th Cir. 2022) ......................................................... 15

*United States v. Wiltberger*,
    18 U.S. (5 Wheat.) 76 (1820) ........................................................ 8

*Wayman v. Southard*,
    23 U.S. (10 Wheat.) 1 (1825) ..................................... 4, 5, 6, 13, 14

*Whitman v. American Trucking Ass'ns, Inc.*,
    531 U.S. 457 (2001).............................. 6, 14, 15, 16, 18, 22, 25

*Whitman v. United States*,
    574 U.S. 1003 (2014).................................................................... 7

*Wooden v. United States*,
    595 U.S. 360 (2022)...................................................................... 4

*Yakus v. United States*,
    321 U.S. 414 (1944)................................................................ 16, 19

## Constitution

U.S. Const. art. I, § 1.................................................................. 2, 6, 14

U.S. Const. art. IV, § 3, cl. 2............................................................ 6, 12

vi

**Statutes**

18 U.S.C. § 13 ...................................................................................26

18 U.S.C. § 790 .................................................................................26

18 U.S.C. § 1382 ...............................................................................26

18 U.S.C. § 1793 ...............................................................................26

18 U.S.C. § 1853 ...............................................................................26

18 U.S.C. § 2291 ...............................................................................26

43 U.S.C. § 1701 .........................................................................23, 24

43 U.S.C. § 1701(a)(8) ......................................................................23

43 U.S.C. § 1701(a)(12) ...............................................................23, 24

43 U.S.C. § 1702(c) ......................................................................17, 20

43 U.S.C. § 1702(h) ......................................................................20, 21

43 U.S.C. § 1712 ...........................................................................21, 22

43 U.S.C. § 1732(a) ......................................................................17, 20

43 U.S.C. § 1733(a) .................................................3, 10, 11, 18, 19, 20

43 U.S.C. § 1761 ...............................................................................20

**Regulations**

43 C.F.R. § 1610.5-3(a) .....................................................................22

43 C.F.R. § 8340.0-8 .........................................................................22

43 C.F.R. § 8341.1 .............................................................................22

43 C.F.R. § 8341.1(f)(5) .....................................................................22

43 C.F.R. § 8341.1(h) .........................................................................22

43 C.F.R. § 8365.1-2(a) .....................................................................11

43 C.F.R. § 8365.1-3(b)(1) ................................................11

43 C.F.R. § 8365.1-6................................................10

**Federal Register**

44 Fed. Reg. 33,384 (June 15, 1979) ................................................22

45 Fed. Reg. 47,843 (July 17, 1980)................................................22

65 Fed. Reg. 54,544 (Sept. 8, 2000) ................................................11

73 Fed. Reg. 39,027 (July 8, 2008) ................................................11

**Other Authorities**

BLM, About Us, https://www.blm.gov/about ................................................9

BLM, What We Manage, https://www.blm.gov/about/what-we-manage................................................9

BLM, Nevada Planning and NEPA,
https://www.blm.gov/programs/planning-and-nepa/plans-in-development/nevada................................................22

BLM, Our Heritage, Our Future: The BLM and America's Public Lands
(2018),https://www.blm.gov/sites/default/files/documents/files/Library_OurHeritageOurFuture.pdf ................................................24

Brett M. Kavanaugh,
*Our Anchor for 225 Years and Counting: The Enduring Significance of the Precise Text of the Constitution*,
89 Notre Dame L. Rev. 1907 (2014) ................................................4

Congressional Research Service, The Federal Land Management
Agencies (Feb. 16, 2021),
https://crsreports.congress.gov/product/pdf/IF/IF10585 ................................................9

Congressional Research Service, Federal Land Ownership: Overview and
Data (Feb. 21, 2020), https://sgp.fas.org/crs/misc/R42346.pdf................................................9

F. Andrew Hessick & Carissa Byrne Hessick,
*Nondelegation and Criminal Law*,
107 Va. L. Rev. 281 (2021) ................................................6, 7

Nadine Strossen,
*Delegation as a Threat to Liberty*,
20 Cardozo L. Rev. 861 (1999) ............................................................5

Naomi Rao,
*Administrative Collusion: How Delegation Diminishes the Collective Congress*,
90 N.Y. U. L. Rev. 1463 (2015) ........................................................15

Philip Hamburger, Is Administrative Law Unlawful? (2014)..................13

Philip Hamburger,
*Nondelegation Blues*,
91 Geo. Wash. L. Rev. 1083 (2023)............................................6, 13, 14, 15, 18

Rachel E. Barkow,
*Separation of Powers and the Criminal Law*,
58 Stan. L. Rev. 989 (2006)..................................................................8

The Federalist No. 47 (Madison) ........................................................4, 5

The Federalist No. 51 (Madison) ...........................................................4

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Some of those key ideas include the separation of powers and constitutionally limited government. As part of this mission, it appears as *amicus curiae* before federal and state courts. Here, AFPF writes to highlight the broader significance of the separation of powers issues that underlie this case.

## SUMMARY OF ARGUMENT

This federal prosecution for an alleged taillight infraction is a classic case of overcriminalization. But, at bottom, "[t]he question here is not whether something should be" a crime; "it is who has the authority" to decide and by what process. *Biden v. Nebraska*, 143 S. Ct. 2355, 2372 (2023). "That is what this [case] is about. Power." *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting).

In this country, all governmental power must flow from its proper source: We the People. Our system of government relies on the consent of the governed,

---

[1] Pursuant to FRAP 29(a)(4)(E), *amicus curiae* state that no counsel for a party other than *amicus* authored this brief in whole or in part, and no counsel or party other than *amicus* made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amicus* or its counsel made a monetary contribution to its preparation or submission. This brief is accompanied by an unopposed motion for leave to file.

1

memorialized in the Constitution. "The Constitution imposes important limits on how the government goes about doing its job." *Consumers' Research v. FCC*, 88 F.4th 917, 938 (11th Cir. 2023) (Newsom, J., concurring in judgment), *cert. pending*, No. 23-743. Our Constitution exclusively tasks the People's elected representatives with making policy choices. And under the Constitution, the political branches may only do so through duly enacted legislation that survives bicameralism and presentment, a deliberately difficult process designed to ensure such laws reflect broad political consensus. This means that unelected ministers are not allowed to make binding laws restricting the People's liberty or imposing obligations on them through bare administrative edict. The Constitution does not vest in or permit the Executive to possess lawmaking powers.

To the contrary, the Constitution flatly prohibits Congress from transferring *any* of its legislative power to other entities. U.S. Const. art. I, § 1. This bedrock proposition holds true a fortiori in the criminal context. For "[i]f the separation of powers means anything, it must mean that the prosecutor isn't allowed to define the crimes he gets to enforce." *United States v. Nichols*, 784 F.3d 666, 668 (10th Cir. 2015) (Gorsuch, J., dissenting from denial of rehearing en banc).

Here, Congress has done that which the Constitution prohibits by transferring to the Bureau of Land Management ("BLM") sweeping legislative power to write its own criminal code covering 245 million acres of federal land. This agglomeration

of legislative and prosecutorial powers within an administrative body with jurisdiction over one-tenth of the land in the United States cannot be allowed to stand. Neither this Court's precedent nor Supreme Court precedent blesses this unconstitutional arrangement. To the contrary, Supreme Court precedent suggests that delegations of crime-writing authority should be greeted skeptically. This Court should therefore reject the Government's proposal to extend constitutionally dubious—and easily distinguishable—Supreme Court and out-of-Circuit precedent and instead decide this case based on the Constitution's original public meaning.

For the foregoing reasons, this Court should hold that 43 U.S.C. § 1733(a) is an unconstitutional delegation of legislative power and affirm the district court's order.

## ARGUMENT

### I.    The Separation of Powers Protects Liberty.

"[T]he Constitution's core, government-structuring provisions are no less critical to preserving liberty than are the later adopted provisions of the Bill of Rights." *Nat'l Labor Relations Bd. v. Canning*, 573 U.S. 513, 571 (2014). Indeed, "[o]f all 'principle[s] in our Constitution,' none is 'more sacred than . . . that which separates the legislative, executive and judicial powers.'" *Allstates Refractory Contractors, LLC v. Su*, 79 F.4th 755, 769 (6th Cir. 2023) (Nalbandian, J.,

3

dissenting) (quoting *Myers v. United States*, 272 U.S. 52, 116 (1926)), *cert. pending*, No. 23-819.

"The Constitution sets out three branches of Government and provides each with a different form of power—legislative, executive, and judicial." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2216 (2020) (Thomas, J., concurring) (citations omitted). "[T]he legislature makes, the executive executes, and the judiciary construes the law[.]" *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 46 (1825). "Perhaps the most important consequence of this assignment concerns the power to punish. Any new national laws restricting liberty require the assent of the people's representatives and thus input from the country's 'many parts, interests and classes.'" *Wooden v. United States*, 595 U.S. 360, 380 (2022) (Gorsuch, J., concurring) (quoting The Federalist No. 51 (Madison)).

"The purpose of the separation . . . of powers" required by the Constitution is "not merely to assure effective government but to preserve individual freedom."[2] *Morrison*, 487 U.S. at 727 (Scalia, J., dissenting); *see Collins v. Yellen*, 141 S. Ct. 1761, 1780 (2021). As Madison explained: "There can be no liberty where the legislative and executive powers are united in the same person, or body of

---

[2] Indeed, "[t]he primary protection of individual liberty in our constitutional system comes from the separation of powers in the Constitution[.]" Brett M. Kavanaugh, *Our Anchor for 225 Years and Counting: The Enduring Significance of the Precise Text of the Constitution*, 89 Notre Dame L. Rev. 1907, 1915 (2014).

magistrates." The Federalist No. 47 (Madison); *see also* Nadine Strossen, *Delegation as a Threat to Liberty*, 20 Cardozo L. Rev. 861, 861 (1999).

This separation "might seem inconvenient and inefficient to those who wish to maximize government's coercive power." *Texas v. Rettig*, 993 F.3d 408, 409 (5th Cir. 2021) (Ho, J., dissenting from denial of rehearing en banc). But "[t]o the Framers, the separation of powers and checks and balances were more than just theories. They were practical and real protections for individual liberty in the new Constitution." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 118 (2015) (Thomas, J., concurring in the judgment); *see INS v. Chadha,* 462 U.S. 919, 959 (1983). Indeed, "the framers' attention to the separation of powers was driven by a particular concern about individual liberty and even more especially by a fear of endowing one set of hands with the power to create and enforce criminal sanctions." *Nichols*, 784 F.3d at 673 (Gorsuch, J., dissenting from denial of rehearing en banc).

## II. The Constitution Bars Congress From Transferring Legislative Power to Other Entities.

Congress may not duck the Constitution's accountability checkpoints by divesting itself of its legislative responsibilities. *See NFIB v. OSHA*, 595 U.S. 109, 124–25 (2022) (per curiam) (Gorsuch, J., concurring); *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 61 (2015) (Alito, J., concurring). The Constitution bars Congress from transferring "powers which are strictly and exclusively legislative" to other entities. *Wayman*, 23 U.S. (10 Wheat.) at 42; *see Loving v. United States,*

5

517 U.S. 748, 758 (1996). That includes Congress's power to "make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States[.]" U.S. Const. art. IV, § 3, cl. 2. *Cf. Kleppe v. New Mexico*, 426 U.S. 529, 540 (1976) (noting Congress exercises legislative power over public lands). Instead, such matters "must be entirely regulated by the legislature itself[.]" *Wayman*, 23 U.S. (10 Wheat.) at 43.

Article I's text makes this pellucidly clear: "All legislative Powers herein granted shall be vested in a Congress, which shall consist of a Senate and House of Representatives." U.S. Const. art. I, § 1. "This text permits no delegation of those powers[.]" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001). The Constitution's structure reenforces this point. *See* Philip Hamburger, *Nondelegation Blues,* 91 Geo. Wash. L. Rev. 1083, 1175–76 (2023). Indeed, "it would frustrate 'the system of government ordained by the Constitution' if Congress could merely announce vague aspirations and then assign others the responsibility of adopting legislation to realize its goals." *Gundy v. United States*, 139 S. Ct. 2116, 2133 (2019) (Gorsuch, J., dissenting) (quoting *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892)). This proposition holds true a fortiori for criminal laws.[3] *Cf. Touby v. United*

---

[3] "For many jurists, the question of Congress's delegating legislative power to the Executive in the context of criminal statutes raises serious constitutional concerns." *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) (plurality op.) (collecting cases), *cert. granted*, 144 S. Ct. 374 (2023); *see also* F. Andrew Hessick

*States*, 500 U.S. 160, 165–66 (1991) (open question whether "something more than an 'intelligible principle' is required" for crime-writing delegations).

"[T]he Anglo-American legal system has long restricted the executive branch's power to create new crimes." *Guedes v. BATFE*, 66 F.4th 1019, 1029 (D.C. Cir. 2023) (Walker, J., dissenting from denial of rehearing en banc). The principle that "[c]rimes are made by legislation, not executive fiat" traces its genesis to Magna Carta. *Id.* And "[w]hen King James I tried to create new crimes by royal command, the judges responded that 'the King cannot create any offence by his prohibition or proclamation, which was not an offence before.'" *Whitman v. United States*, 574 U.S. 1003, 1004 (2014) (Scalia, J., statement respecting denial of certiorari) (quoting *Case of Proclamations*, 77 Eng. Rep. 1352, 1353 (K.B. 1611)). "[T]he framers' concerns about the delegation of legislative power [also] had a great deal to do with the criminal law. The framers worried that placing the power to legislate, prosecute, and jail in the hands of the Executive would invite the sort of tyranny they experienced at the hands of a whimsical king." *Nichols*, 784 F.3d at 670 (Gorsuch,

---

& Carissa Byrne Hessick, *Nondelegation and Criminal Law*, 107 Va. L. Rev. 281, 286 (2021) ("[C]riminal law delegations" "present greater threats to the principles underlying the nondelegation doctrine[.]"). For good reason. "These delegations "mak[e]" the agency "the expositor, executor, and interpreter of criminal laws." *Aposhian v. Wilkinson*, 989 F.3d 890, 900 (10th Cir. 2021) (Tymkovich, J., dissenting from denial of rehearing en banc).

J., dissenting from denial of rehearing en banc); *see* Rachel E. Barkow, *Separation of Powers and the Criminal Law,* 58 Stan. L. Rev. 989, 1011–17, 1031 (2006).

To guard against this danger to liberty, under the Constitution "[o]nly the people's elected representatives in Congress have the power to write new federal criminal laws." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). "Since the early days of our Republic, it has been a bedrock legal principle that our government cannot criminalize conduct and send people to prison except through democratically passed laws that have made it through both Houses of Congress and been signed by the President." *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 910 (6th Cir. 2021) (en banc) (Murphy, J., dissenting) (citing *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812)). As Chief Justice Marshall wrote, "the power of punishment is vested in the legislative," which means "[i]t is the legislature . . . which is to define a crime, and ordain its punishment." *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820); *see also Hudson*, 11 U.S. (7 Cranch) at 34 ("The legislative authority of the Union must first make an act a crime, affix a punishment to it, and declare the Court that shall have jurisdiction of the offence.").

## III. Section 1733(a) Unconstitutionally Transfers Legislative Power to BLM.

### A. Section 1733(a) Grants BLM Sweeping Crime-Writing Powers.

BLM's vast and unconstrained power to create and enforce its own criminal code makes a mockery of the separation of powers required by the Constitution.

8

"Essentially, the BLM acts as a conservationist agency with law enforcement powers on public lands." ER4. It has "a massive reach" and "is today the nation's largest land manager," "manag[ing] 245 million acres of public lands . . . and 700 million acres of mineral estate." BLM, About Us, https://www.blm.gov/about. BLM manages 10 percent of the country's land and 30 percent of its mineral resources, giving it great power. *See* ER20–21; BLM, What We Manage, https://www.blm.gov/about/what-we-manage; *see also Or. Nat. Desert Ass'n v. BLM*, 625 F.3d 1092, 1114 (9th Cir. 2010) (noting "BLM's wide authority").

A picture is worth a thousand words.[4]



**Figure 1. Federal Land Managed by FS, BLM, FWS, and NPS**

**Source:** CRS.

**Note:** BLM = Bureau of Land Management; FS = Forest Service; FWS = Fish and Wildlife Service; NPS = National Park Service. In this CRS product, the West refers to the following states: AK, AZ, CA, CO, ID, MT, NM, NV, OR, UT, WA and WY.

---

[4] Congressional Research Service, The Federal Land Management Agencies 1 (Feb. 16, 2021), https://crsreports.congress.gov/product/pdf/IF/IF10585; *see also* Congressional Research Service, Federal Land Ownership: Overview and Data 12–14 (Feb. 21, 2020) (maps showing the portion of land in the United States governed by BLM), https://sgp.fas.org/crs/misc/R42346.pdf.

That is what 245 million acres of land looks like. Essentially, Congress has tasked an administrative body with managing an area of land that is almost as large as Texas and California combined.

In so doing, Congress has also purported to empower BLM to act as legislature and governor over this wide swath of land, effectively wielding the powers of a sovereign within the borders of its kingdom. Section 1773(a) delegates to the Secretary of the Interior (who administers the BLM) unfettered power to issue any "regulations necessary to implement the provisions of [the Federal Land Policy and Management Act of 1976] with respect to the management, use, and protection of the public lands, including the property located thereon."[5] 43 U.S.C. § 1733(a); *see United States v. Henderson*, 243 F.3d 1168, 1171 (9th Cir. 2001). "These regulations 'alter' the legal rights of those that use BLM land[.]" ER14. *Cf. Chadha,* 462 U.S. at 952 ("action that had the purpose and effect of altering the legal rights, duties, and relations of persons" is legislative). And violations carry criminal penalties. 43 U.S.C. § 1733(a); *see Henderson,* 243 F.3d at 1171.

That delegation covers the waterfront. To write a crime all the Secretary must do is find a regulation is "necessary" for any rhyme or reason. There is no

---

[5] BLM regulations purport to grant BLM State Directors discretion to issue supplementary rules that are binding within their jurisdictions "as he/she deems necessary." 43 C.F.R. § 8365.1-6. "In a state like Nevada, these State BLM Directors are essentially single-person legislators and governors because they promulgate regulations (laws) and enforce the regulations (laws)." ER15.

requirement for preliminary factfinding. Nor any meaningful limiting criteria bounding the Secretary's discretion and power. As the district court found: "[T]he words 'management, use, and protection' do not limit the authority to promulgate regulations because those words cover almost all conduct on public lands." ER14 (citing 43 U.S.C. § 1733(a)).

To put this in practical perspective, this delegation lets the agency "promulgate a plethora of rules from housing policies, to traffic laws, to firearms regulations, to mining rules, to agriculture certifications," thereby granting it "unfettered legislative authority to promulgate rules for over 48 million acres of land [in Nevada], which is 68% of the state[.]"[6] ER14–15 (footnotes omitted). For example, BLM has used its legislative authority to criminalize uncertified hay, mulch, or straw possession, 65 Fed. Reg. 54,544, 54,545 (Sept. 8, 2000); camping longer than authorized, 43 C.F.R. § 8365.1-2(a); use of nonconforming seatbelts, 43 C.F.R. § 8365.1-3(b)(1); and picking up rocks in certain areas, 73 Fed. Reg. 39,027, 39,030 (July 8, 2008). "In fact, the BLM has used this authority to write regulations criminalizing behavior that the state would normally criminalize, like outdated vehicle registration, coal exploration, horse adoption, noisiness, fraud, discrimination, and homelessness." ER16 (footnote omitted).

---

[6] Nevada is not unique in this regard. *See Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 58 (2004) ("Almost half the State of Utah, about 23 million acres, is federal land administered by" BLM.).

In short, "Congress pointed to a problem that needed fixing and more or less told the Executive to go forth and figure it out." *Nichols*, 784 F.3d at 674 (Gorsuch, J., dissenting from denial of rehearing en banc). In so doing, it essentially empowered the BLM with the crime-writing powers of a state legislature and a state governor, outsourcing its nondelegable duty to "make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States," U.S. Const. art. IV, § 3, cl. 2, to unelected administrators. "This is delegation running riot," *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 553 (Cardozo, J., concurring), "a result inimical to the people's liberty and our constitutional design," *Nichols*, 784 F.3d at 677 (Gorsuch, J., dissenting from denial of rehearing en banc). And it is unconstitutional.

### B. As an Originalist Matter, 43 U.S.C. § 1733(a) Violates Article I's Vesting Clause.

"Strictly speaking, there is *no* acceptable delegation of legislative power." *Mistretta v. United States*, 488 U.S. 361, 419–20 (1989) (Scalia, J., dissenting) (emphasis in original). This raises the question what is "legislative power" that Congress may not delegate. "When it came to the legislative power, the framers understood it to mean the power to adopt generally applicable rules of conduct governing future actions by private persons[.]" *Gundy*, 139 S. Ct. at 2133 (Gorsuch, J., dissenting); *see Ass'n of Am. R.R.*, 575 U.S. at 76 (Thomas, J., concurring in the judgment); *Consumers' Research*, 88 F.4th at 929–30 (Newsom, J., concurring in

12

judgment). *Cf.* Philip Hamburger, Is Administrative Law Unlawful? 84 (2014) ("In general, the natural dividing line between legislative and nonlegislative power was between rules that bound subjects and those that did not.").

"[L]egislative power most basically involves an exercise of will in ordaining legally binding rules. This power to will binding rules is the natural core of legislative power." Hamburger, 91 Geo. Wash. L. Rev. at 1113. Among other things, that includes the power to "make the policy decisions when regulating private conduct[.]" *Gundy*, 139 S. Ct. at 2136 (Gorsuch, J., dissenting). That most certainly includes writing crimes. *Cf. United States v. Evans*, 333 U.S. 483, 486 (1948) ("[D]efining crimes and fixing penalties are legislative, not judicial, functions.").

By that measure, 43 U.S.C.§ 1733(a) allows unelected ministers at BLM to exercise legislative power and is thus unconstitutional. That is because it grants BLM free-floating power to make controlling policy decisions backed by criminal sanctions governing one-tenth of United States land. Those fundamental policy choices are no mere details or fill-in-the-blank factfinding exercises.[7] *Cf. Gundy*, 139 S. Ct. at 2135–37 (Gorsuch, J., dissenting). That should be the end of the analysis.

But the Supreme Court's delegation precedent has strayed from the Constitution's original public meaning, as scholars and jurists alike have observed.

---

[7] To be sure, "[t]he line has not been exactly drawn" between "important subjects, which must be entirely regulated by the legislature itself" and matters of "less

*See, e.g., id.* at 2139 (Gorsuch, J., dissenting); *Whitman*, 531 U.S. at 487 (Thomas, J., concurring); *Ass'n of Am. R.R.*, 575 U.S. at 76 (Thomas, J., concurring in the judgment); *Consumers' Research*, 88 F.4th at 928 (Newsom, J., concurring in judgment); *id.* at 938 (Lagoa, J., concurring); Hamburger, 91 Geo. Wash. L. Rev. at 1095 ("[T]he current nondelegation doctrine has no originalist foundation."); *see Tiger Lily, LLC v. HUD,* 5 F.4th 666, 674 (6th Cir. 2021) (Thapar, J., concurring); *Allstates*, 79 F.4th at 788 n.17 (Nalbandian, J., dissenting); *see also Rettig*, 993 F.3d at 417–18 (Ho, J., dissenting from denial of rehearing en banc). "[T]h[e] mutated version of the 'intelligible principle' remark" in *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928), that forms the basis of the "intelligible principle" test "has no basis in the original meaning of the Constitution, in history, or even in the decision from which it was plucked."[8] *Gundy*, 139 S. Ct. at 2139 (Gorsuch, J., dissenting).

Making matters worse, this judicially created doctrine has opened the floodgates for Congress to shirk its duty to make policy choices—even and

interest" that Congress can delegate to others "to fill up the details." *Wayman*, 23 U.S. (10 Wheat.) at 43. "But the inherent difficulty of line-drawing is no excuse for not enforcing the Constitution." *Ass'n of Am. R.R.*, 575 U.S. at 61 (Alito, J., concurring); *see id.* at 86 (Thomas, J., concurring).

[8] Instead, the Constitution "speaks in much simpler terms: '*All* legislative Powers herein granted shall be vested in a Congress.'" *Whitman*, 531 U.S. at 487 (Thomas, J., concurring) (quoting U.S. Const. art. 1, § 1).

especially politically difficult and important ones—by transferring its legislative power to administrative bodies. *See Whitman*, 531 U.S. at 487 (Thomas, J., concurring); *Consumers' Research*, 88 F.4th at 932 (Newsom, J., concurring in judgment). "The nondelegation doctrine purports to hold the line against congressional delegation but actually lets Congress delegate legislative power to agencies," "serv[ing] as little more than an open gate for the delegation of legislative power—even if the sign above the gate declares the opposite." Hamburger, 91 Geo. Wash. L. Rev. at 1091. "This is a classic case in which a gap exists between constitutional meaning and the judicial standards for enforcement." Naomi Rao, *Administrative Collusion: How Delegation Diminishes the Collective Congress*, 90 N.Y.U. L. Rev. 1463, 1508 (2015).

As Justice Thomas has observed in a related context: "As in other areas of our jurisprudence concerning administrative agencies, we seem to be straying further and further from the Constitution without so much as pausing to ask why." *Michigan v. EPA*, 576 U.S. 743, 763 (2015) (Thomas, J., concurring).

### C. Section 1733(a) Lacks an Intelligible Principle.

Even under the modern nondelegation doctrine, the delegation at issue here fails to pass constitutional muster.[9]

---

[9] "[T]he Constitution's original meaning is law, absent binding precedent to the contrary." *United States v. Rife*, 33 F.4th 838, 843–44 (6th Cir. 2022). This Court

Under the Supreme Court's current jurisprudence, "Congress must 'lay down by legislative act an intelligible principle to which the person or body authorized to act is directed to conform.'" *Whitman*, 531 U.S. at 472 (quoting *J.W. Hampton*, 276 U.S. at 409). Delegations must contain standards that "are sufficiently definite and precise to enable Congress, the courts and the public to ascertain whether the" agency "has conformed to those standards." *Yakus v. United States*, 321 U.S. 414, 426 (1944). This Court has said that "a delegation is permissible if Congress has made clear to the delegee 'the general policy' he must pursue and the 'boundaries of his authority.'" *United States v. Melgar-Diaz*, 2 F.4th 1263, 1267 (9th Cir. 2021) (citation omitted). Congress has not done so here.

The intelligible-principle regime "requires a court to analyze a statute for two things: (1) a fact-finding or situation that provokes Executive action or (2) standards that sufficiently guide Executive discretion—keeping in mind that the amount of detail governing Executive discretion must correspond to the breadth of delegated power. If neither of these exist, under Supreme Court precedent, there is no intelligible principle. Rather, that law would be an unconstitutional grant of legislative power under Article I." *Allstates*, 79 F.4th at 776 (Nalbandian, J.,

---

should enforce the Constitution's original public meaning "to the maximum extent permitted by a faithful reading of binding precedent." *Rettig*, 993 F.3d at 409 (Ho, J., dissenting from denial of rehearing en banc); *see Edmo v. Corizon, Inc.*, 949 F.3d 489, 506 (9th Cir. 2020) (Bumatay, J., dissenting from denial of rehearing en banc).

dissenting); *see also Panama Ref. Co. v. Ryan*, 293 U.S. 388, 415 (1935). Neither obtains here.

First, BLM's power to issue regulations carrying criminal penalties is not contingent on fact finding or the existence of any particular situation. *See* ER16 (noting BLM's "ability to legislate for whatever they see necessary"). The Government does not argue otherwise, instead defending the delegation solely on the ground that it is sufficiently constrained to provide an intelligible principle.[10]

Second, the statute provides no standards to cabin BLM's crime-writing powers, let alone sufficiently detailed standards given the sweeping scope of BLM's authority over one-tenth of the land in the United States. Bizarrely, the Government suggests that the vast swath of land BLM manages and its "wide-ranging, 'multiple use' mission" "place[s] Congress's grant of authority to the Secretary on *firmer* [constitutional] footing[.]"[11] OB23–24 (quoting 43 U.S.C. § 1732(a)). That argument gets things exactly backwards. It also flies in the face of Supreme Court precedent. *See* ER19 n.10.

---

[10] The Government does not dispute the district court's conclusion that BLM's crime-writing power is legislative in nature. *Compare* ER14, *with* OB10.

[11] "'Multiple use management' is a deceptively simple term that describes the enormously complicated task of striking a balance among the many competing uses to which land can be put[.]" *SUWA*, 542 U.S. at 58 (quoting 43 U.S.C. § 1702(c)).

17

"Under the non-delegation doctrine, 'the degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred.'" *Melgar-Diaz*, 2 F.4th at 1267 (quoting *Whitman*, 531 U.S. at 475); *see also Synar v. United States*, 626 F. Supp. 1374, 1386 (D.C. Cir. 1986) (per curiam) ("When the scope increases to immense proportions (as in *Schechter*) the standards must be correspondingly more precise."). *But cf.* Hamburger, 91 Geo. Wash. L. Rev. at 1098–1105 (arguing importance of delegated power is not key benchmark). This means that "[l]aws that vest more power require more constraints."[12] *Allstates*, 79 F.4th at 776 (Nalbandian, J., dissenting). "The Supreme Court has also suggested that 'greater congressional specificity [may be] required in the criminal context.'"[13] *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 734 (6th Cir. 2013) (Sutton, J., concurring) (quoting *Touby*, 500 U.S. at 166); *see Nichols*, 784 F.3d at 672 (Gorsuch, J., dissenting from denial of rehearing en banc) (collecting cases).

Here, everything turns on whether the word "necessary" in 43 U.S.C. § 1733(a) sets out an intelligible principle. *See* ER14. It does not. It instead grants the Secretary "an unlimited authority to determine the policy and to lay down the

---

[12] There may be cases where "the significance of the delegated decision is simply too great for the decision to be called anything other than 'legislative[.]'" *Whitman*, 531 U.S. at 487 (Thomas, J., concurring).

[13] This Court has not addressed this question. *See United States v. Motamedi,* No. 20-10364, 2022 WL 101951, at *2 (9th Cir. Jan. 11, 2022) (unpublished).

prohibition, or not to lay it down, as [the Secretary] may see fit." *Panama Ref. Co.*, 293 U.S. at 415. BLM "is free to select as [it] chooses . . . and then to act without making any finding[s]," *id.* at 388, as BLM "roam[s] at will" "in that wide field of legislative possibilities," *Schechter*, 295 U.S. at 538. This "absence of standards" makes it "impossible" "to ascertain whether the will of Congress has been obeyed[.]" *Yakus*, 321 U.S. at 426.

Worse, as with the unconstitutional delegations at issue in *Panama Refiners, see* 293 U.S. at 415, and *Schechter*, *see* 295 U.S. at 527–28, the statute grants BLM unfettered discretion to criminalize private conduct however it wants for whatever reason it wants. *See* 43 U.S.C. § 1733(a). *See generally Fahey v. Mallonee,* 332 U.S. 245, 249 (1947) (noting that *Panama Refining* and *Schecter* both "dealt with delegation of a power to make federal crimes of acts that never had been such before and to devise novel rules of law in a field in which there had been no settled law or custom"). It "does nothing to cabin the Secretary of the Interior's ability to choose what is a crime." ER16. This arrangement gives the Secretary "the power to write a criminal code rife with his own policy choices," *Gundy*, 139 S. Ct. at 2144 (Gorsuch, J., dissenting), covering one-tenth of the country.

"If the intelligible principle standard means anything, it must mean that a total absence of guidance is impermissible under the Constitution." *Jarkesy v. SEC*, 34 F.4th 446, 462 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023). That conclusion

19

holds true a fortiori here given the sweeping scope of Congress's delegation of criminal lawmaking power to BLM.[14] As the district court found, 43 U.S.C. § 1733(a) unconstitutionally "delegates legislative power to an Executive agency." ER13.

### D. The Government's Rummaging in Other Provisions for an Intelligible Principle Is Unavailing.

The Government's arguments to the contrary are unavailing. The Government asserts that "FLPMA sets the boundaries of the delegated authority." OB17. Not so. None of the provisions the Government points to cabin the Secretary's discretion. In fact, some of these other provisions *expand* the Secretary's powers by giving her additional policy goals to use as hooks for crime-writing.

For instance, 43 U.S.C. § 1732(a)'s reference to "principles of multiple use and sustained yield" is utterly standardless. And the statutory definitions of these terms do not change this—if anything, only exacerbating the delegation problem. *See* 43 U.S.C. §§ 1702(c), (h). Consider, for example, the statutory definition of "multiple use," which references "best [meeting] the present and future needs of the American people" and "tak[ing] into account the long-term needs of future generations for renewable and nonrenewable resources, including, but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific and historical values[.]" *Id.* § 1702(c). That is meaningless. The

---

[14] If the delegation at issue here passes muster under the intelligible principle test, that test should be revisited.

20

definition of "sustained yield" as "the achievement and maintenance in perpetuity of a high-level annual or regular periodic output of the various renewable resources of the public lands consistent with multiple use" is equally vacuous. *See id.* § 1702(h). Nothing in these provisions provides anything resembling an objective standard or criteria against which to test exercises of the Secretary's powers. "As a matter of first principles—as in real life—such empty, mealymouthed shibboleths provide no meaningful constraint; to the contrary, they confer front-line law- and policymaking power on unelected, unaccountable agency bureaucrats." *Consumers' Research*, 88 F.4th at 931 (Newsom, J., concurring in judgment).

Next, the Government points to "[o]ther FLPMA provisions" it claims "also delineate the boundaries of the mandate set out in 43 U.S.C. § 1732," citing 43 U.S.C. § 1712 and  43 U.S.C. § 1761. OB17. Neither provision helps the Government.

Section 1761, titled "[g]rant, issue, or renewal of rights-of-way," affirmatively authorizes the Secretary "to grant, issue, or renew rights-of-way" for certain purposes. *See* 43 U.S.C. § 1761. It is inapposite to the delegation at issue here and, in any event, does nothing to limit the scope of BLM's untrammeled power under 43 U.S.C. § 1733(a) to create its own criminal code.

Section 1712(c) pertains to land-use plans generally and likewise does not cabin BLM's crime-writing powers. There is no statutory requirement that BLM

regulations carrying criminal penalties comply with or follow these land-use plans.[15] *See id.* § 1712. And, more fundamentally, the general applicability of BLM's criminal regulations belies the Government's contention that statutory requirements relating to specific localized (and temporally limited) land use plans have anything to do with, let alone constrain, BLM's general crime-writing powers.

Consider the taillight regulations at issue here, 43 C.F.R. §§ 8341.1(f)(5), (h), which have been on the books since 1979, *see* 44 Fed. Reg. 33,384 (June 15, 1979),[16] and "apply to *all public lands, roads, and trails* under administration of the Bureau." 43 C.F.R. § 8340.0-8 (emphasis added). It beggars belief that *any* of BLM's Nevada-specific land-use plans—all of which post-date the criminal regulations at issue here[17]—played any role in shaping those regulations or otherwise constraining the agency's discretion. And even if the contents of a land-use plan were, by regulation, internally binding on the agency, it cannot save the statute. *See Whitman*, 531 U.S. at 473 ("Whether the statute delegates legislative power is a question for the courts, and an agency's voluntary self-denial has no bearing upon the answer.").

---

[15] BLM has committed by regulation to following these plans. *See* 43 C.F.R. § 1610.5-3(a). But as discussed *infra*, that is irrelevant.

[16] 43 C.F.R. § 8341.1 was amended in July 1980 to, as relevant here, redesignate certain subparagraphs. *See* 45 Fed. Reg. 47,843 (July 17, 1980).

[17] *See* BLM, Nevada Planning and NEPA, https://www.blm.gov/programs/planning-and-nepa/plans-in-development/nevada.

Nor do the broad aspirational policy goals set forth in 43 U.S.C. § 1701's "Congressional declaration of policy" guide or limit the Secretary's discretion. The Government's arguments to the contrary are unavailing. *See* OB18. Any suggestion that "an 'intelligible principle' can be rummaged out of" the "policy objectives voiced in a statute's preamble" should be rejected. *Nichols*, 784 F.3d at 674 (Gorsuch, J., dissenting from denial of rehearing en banc). These policy declarations do not set forth binding constraints on the Secretary's authority. *Cf. Panama Ref. Co.*, 293 U.S. at 418. To the contrary, if anything, they grant the Secretary *additional* powers. *See* ER21.

Section 1701's vague and competing declarations of policy make the delegation worse, not better. And, in any event, nothing in the text of these policy statements sets forth any principle, let alone an intelligible one, to *constrain* the Secretary's discretion.[18] *See* ER4; ER20–21. For example, the statute's policy declarations task BLM with deciding what actions will "protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values," guarantee "domestic sources," and "provide for outdoor recreation and human occupancy and use."[19] 43 U.S.C. §§ 1701(a)(8), (12).

---

[18] These policy declarations are even broader than those at issue in *Schechter*. *See* 295 U.S. at 531 n.9, 534–35, 536 (quoting relevant statutory policy declarations).

[19] The Government omits mention of ten other policy declarations further expanding BLM's crime-writing powers. *See* 43 U.S.C. §§ 1701(a)(1)–(6), (9)–(11), (13).

But these declarations say nothing about how the Secretary is supposed to go about doing this and in no way limit the Secretary's powers.

The Government's reliance on the policy declaration in 43 U.S.C. § 1701(a)(12), *see* OB18, is particularly misplaced. BLM itself has said that when FLMPA was enacted "neither Commission members nor Congress could agree on how to accomplish this ordering of user preferences or prioritizing of public lands values." U.S. Department of the Interior, BLM, Our Heritage, Our Future: The BLM and America's Public Lands 4 (2018).[20] To fill this policy void, "BLM used its own discretion" and "made critical decisions for allocating the land's resources[.]" *Id.*

In short, as in *Panama Refining*, 43 U.S.C. § 1701 "speaks in general terms of the conservation of natural resources, but it prescribes no policy for the achievement of that end. . . . [T]his broad outline is simply an introduction of the Act, leaving the legislative policy as to particular subjects to be declared and defined, if at all, by the subsequent sections." 293 U.S. at 418.

Finally, any effort by BLM to save the statute by proposing a limiting construction or promising to behave responsibly should also be rejected. BLM "cannot choose its own intelligible principle." *State of W.Va. v. Dep't of the*

---

Together, 43 U.S.C. § 1701's thirteen listed policy goals "provide authority over almost every subject matter." ER21.

[20]https://www.blm.gov/sites/default/files/documents/files/Library_OurHeritageOur Future.pdf

*Treasury*, 59 F.4th 1124, 1148 (11th Cir. 2023). And the Supreme Court "ha[s] never suggested that an agency can cure an unlawful delegation of legislative power by adopting in its discretion a limiting construction of the statute." *Whitman*, 531 U.S. at 472. The same holds true for this Court. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020); *Whitman*, 531 U.S. at 473. Nor can constitutional avoidance rescue Congress's constitutionally flawed handiwork. *See Seila Law*, 140 S. Ct. at 2207 ("Constitutional avoidance is not a license to rewrite Congress's work to say whatever the Constitution needs it to say in a given situation."); *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018).

## IV. Policy Arguments Against Requiring Congress to Do Its Job Are Misplaced and Cannot Justify Ignoring the Constitution's Demands.

In a wayward effort to save the statute, the Government suggests modern society is too complicated for the People to rule themselves through their elected representatives and resorts to parade-of-horribles handwaving about the consequences of affirming the district court's decision. *See* OB12–13, 17 n.5. Those policy arguments are constitutionally irrelevant and, in any event, lack merit on their own terms. *See Tiger Lily,* 5 F.4th at 674–75 (Thapar, J., concurring).

The Government's policy arguments ring particularly hollow here because the crimes BLM creates by administrative edict States routinely regulate by statute. *See* ER16 & n.9 (listing examples). If State legislatures are competent to handle such matters, so is Congress. Underscoring this, Congress has passed numerous federal

25

statutes criminalizing specific conduct on federally owned or federally managed land in many contexts, showing that it is more than capable of doing so. *See, e.g.,* 18 U.S.C. § 1853 (national forests); *id.* § 1382 (military bases*); id.* § 1793 (federal prisons); *id.* § 790 (foreign embassies); *id.* § 2291 (shipyards). For that matter, Congress can incorporate state law by reference, if it so chooses. *See, e.g.*, *id.* § 13 (incorporating state law for certain areas otherwise under federal jurisdiction). In short, the sky will not fall if this Court enforces the Constitution. It should do so.

## CONCLUSION

This Court should affirm the district court's order.

Respectfully submitted,

/s/ Michael Pepson
Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
571.329.4529
mpepson@afphq.org

26

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** <u>23-991</u>

I am the attorney or self-represented party.

**This brief contains <u>6,274</u> words,** including <u>**108**</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** <u>/s/ Michael Pepson</u>          **Date** <u>April 25, 2024</u>

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2024, I electronically filed the above Brief of Amicus Curiae Americans for Prosperity Foundation in Support of Defendant—Appellee with the Clerk of the Court by using the appellate CM/ECF system. I further certify that service will be accomplished by the appellate CM/ECF system.


/s/ Michael Pepson
Michael Pepson

Dated: April 25, 2024

28