CA No. 23-991

# In the
# United States Court of Appeals
# For the Ninth Circuit

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

GREGORY PHEASANT,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Nevada,

**District Court No.** 3:21-cr-24 (Robert C. Jones, *J.*)

**GOVERNMENT'S REPLY BRIEF**

| | |
|---|---|
| JASON M. FRIERSON<br>United States Attorney | ADAM FLAKE<br>Appellate Chief and<br>Assistant U.S. Attorney<br>501 Las Vegas Boulevard South<br>Suite 1100<br>Las Vegas, Nevada 89101<br>(702) 388-6336<br>adam.flake@usdoj.gov<br>*Attorneys for the United States* |

Date submitted: July 2, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

I.　INTRODUCTION ................................................................................... 1

II.　ARGUMENT ........................................................................................... 2

　　A.　Congress Properly Delegated the Authority to Issue Rules and Regulations Governing Federal Land to the Secretary of the Interior, Who in Turn Delegated It to the BLM ............................ 2

　　B.　The Fact That the Regulations Promulgated Pursuant to FLPMA Include Criminal Sanctions Does Not Heighten the Standard of Review and, Even If It Did, FLPMA Passes this Hypothetical Heightened Standard. ................................................................ 7

　　C.　This Court Should Not Address Pheasant's Arguments Regarding Dismissed Counts that Are Not at Issue in this Appeal. ............. 12

III.　CONCLUSION ..................................................................................... 13

IV.　STATEMENT OF RELATED CASES ............................................... 14

　　CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Federal Cases**

*A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935) ................... 6

*American Power & Light Co. v. SEC*, 329 U.S. 90 (1946) .............................. 2, 5

*Big Time Vapes, Inc. v. Food & Drug Admin.*, 963 F.3d 436 (5th Cir. 2020) ......... 7

*Gundy v. United States*, 139 S. Ct. 2116 (2019) ............................................ 2, 4, 9

*J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394 (1928) .......................... 2

*Mistretta v. United States*, 488 U.S. 361 (1989) ............................................. 2, 7, 9

*Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935) .................................... 6, 7, 12

*Touby v. United States*, 500 U.S. 160 (1991) ................................................... 9, 10

*United States v. Amirnazmi*, 645 F.3d 564 (3d Cir. 2011) ................................. 11

*United States v. Arch Trading Co.*, 987 F.2d 1087 (4th Cir. 1993) .................... 11

*United States v. Brown*, 364 F.3d 1266 (11th Cir. 2004) ........................... 5, 6, 10

*United States v. Brown*, 552 F.2d 817 (8th Cir. 1977) ......................................... 5

*United States v. Cooper*, 750 F.3d 263 (3d Cir. 2014) ....................................... 11

*United States v. Dhafir*, 461 F.3d 211 (2d Cir. 2006) ........................................ 11

*United States v. Grimaud*, 220 U.S. 506 (1911) .............................................. 8, 9

*United States v. Gurrola-Garcia*, 547 F.2d 1075 (9th Cir. 1976) ......................... 8

*United States v. Melgar-Diaz*, 2 F.4th 1263 (9th Cir. 2021) ........................... 2, 10

*Whitman v. American Trucking Associations*, 531 U.S. 457 (2001) ................ 6, 10

*Yakus v. United States*, 321 U.S. 414 (1944) ................................................ 6, 7, 9

**Federal Statutes**

17 U.S.C. § 1733 ..................................................................................................... 1

43 U.S.C. § 1701 ............................................................................................. 2, 3, 5

43 U.S.C. § 1702 .................................................................................................... 3

43 U.S.C. § 1712 .................................................................................................... 4

43 U.S.C. § 1732 ................................................................................................. 3, 5

43 U.S.C. § 1733 ................................................................................................. 4, 8

43 U.S.C. § 1761 .................................................................................................... 4

43 U.S.C. § 1772 .................................................................................................... 3

**Federal Rules**

Fed. R. App. P. 32 ................................................................................................ 15

**Other Authorities**

Julian Davis Mortenson, Nicholas Bagley, *Delegation at the Founding*,
 121 Colum. L. Rev. 277 (2021) ............................................................... 11

Cass R. Sunstein, *Nondelegation Canons*, 67 U. Chi. L. Rev. 315 (2000) ......... 11

# I.
# INTRODUCTION

The Federal Land Policy and Management Act ("FLPMA" or "Act") meaningfully constrains and guides the Secretary of the Interior's authority to promulgate regulations with respect to "the management, use, and protection of public lands," 17 U.S.C. § 1733(a), and thus readily meets the requirements established by the Supreme Court's nondelegation cases. Pheasant's contrary argument erroneously disregards the limits the Act places on the Secretary and her delegee, the Bureau of Land Management, and misunderstands the Supreme Court's governing test.

Pheasant also argues that by declining to appeal the district court's dismissal of certain counts—counts the government had already agreed to dismiss and re-indict—the government waived the right to appeal if the government chooses to seek a new indictment and the district court chooses to dismiss those counts again. Those counts are not at issue in this appeal, and this Court should decline to address Pheasant's speculative and premature argument.

1

## II.

## ARGUMENT

**A. Congress Properly Delegated the Authority to Issue Rules and Regulations Governing Federal Land to the Secretary of the Interior, Who in Turn Delegated It to the BLM.**

As the government's Opening Brief explained, delegations are constitutional so long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (second alteration in original) (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928)). As this Court recently reiterated, that standard is "not demanding." *United States v. Melgar-Diaz*, 2 F.4th 1263, 1266-67 (9th Cir. 2021) (quoting *Gundy v. United States*, 139 S. Ct. 2116 (2019)). It is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Mistretta*, 488 U.S. at 372–73 (quoting *American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).

Congress's delegation to the Secretary of the Interior to promulgate regulations to implement FLPMA readily meets this standard. The Act sets out in detail the federal government's policies with respect to the management, use, and protection of the public lands. 43 U.S.C. § 1701(a). It specifies, for

2

example, that it is the policy of the United States that the public lands "be managed in a manner that will protect the quality of scientific, scenic, historical," and environmental value of the land; that the public lands be preserved "in their natural condition," where appropriate; and that the public lands "provide for outdoor recreation and human occupancy and use." *Id.*

In furtherance of these policies, the Act directs that the Secretary "shall manage the public lands under principles of multiple use and sustained yield," 43 U.S.C. § 1772(a), both of which Congress defined, *id.* § 1702(c), (h). Congress explained, for example, that the principle of "multiple use" means managing the public lands so that they are "utilized in the combination that will best meet the present and future needs of the American people," and in a manner that provides for "harmonious and coordinated management of the various resources" on the land without permanent impairment of the "quality of the environment." *Id.* § 1702(c). "[S]ustained yield" "means the achievement and maintenance in perpetuity of a high-level annual or regular periodic output of the various renewable resources of the public lands consistent with multiple use." *Id.* § 1702(h). Congress further directed that, in "[i]n managing the public lands," "the Secretary shall" take actions "necessary to prevent unnecessary or undue degradation of the land." *Id.* § 1732(b); *see*

3

*also, e.g.*, *id.* §§ 1712(c), 1761 (further addressing the development of land-use plans and rights-of-way).

To carry out FLPMA, Congress authorized the Secretary to "issue regulations necessary to implement the provisions of this Act with respect to the management, use, and protection of the public lands," and specified that "[a]ny person who knowingly and willfully violates any such regulation which is lawfully issued pursuant to this Act shall be fined no more than $1,000 or imprisoned no more than twelve months, or both." 43 U.S.C. § 1733(a).

Pheasant is thus wrong in claiming that Congress has failed to supply any intelligible principle to guide the Secretary. *See* AB 12–16.¹ In asserting that the Secretary's authority is "unlimited," Pheasant isolates individual words from § 1733(a). *See* AB 12–13. The Supreme Court has explained, however, that delegations are not to be interpreted "in a vacuum." *Gundy*, 588 U.S. at 141 (plurality opinion) (quotation marks omitted).

The Secretary's authority to promulgate regulations "necessary to implement the provisions of" FLPMA, 43 U.S.C. § 1733(a), is plainly guided—and meaningfully constrained—by its surrounding provisions. These include, for example, the Act's enumerated policies and the provisions

---

¹ "OB" denotes the Appellant's Opening Brief; "AB" denotes the Appellee's Answering Brief.

4

specifying the "principles" by which the Secretary "shall manage the public lands," *e.g.*, *id.* §§ 1701, 1732(a). Pheasant's assertion that such provisions must be ignored because they appear in "separate" statutory sections from the text of the delegation itself, *see* AB 32, is without merit. *See American Power & Light Co.*, 329 U.S. at 104.

As the government's Opening Brief explained, the statute at issue here is similar to other delegations that courts have recognized pose no constitutional concerns. *See* OB 13-16, 19-21. For example, courts have upheld a substantially similar statute authorizing the Secretary of the Interior to promulgate regulations "necessary or proper for the use and management of the parks, monuments, and reservations," where Congress made the violation of the Secretary's regulations subject to criminal penalty. *See United States v. Brown*, 364 F.3d 1266, 1273 (11th Cir. 2004);] *see also United States v. Brown*, 552 F.2d 817, 822-23 & n.8 (8th Cir. 1977). In rejecting a criminal defendant's nondelegation challenge to the statute in *Brown*, the Eleventh Circuit explained that the statute supplied an intelligible principle: Congress had directed the Secretary to "promote and regulate" the national parks consistent with the statute's enumerated purpose "to conserve the scenery" and wildlife therein "to provide for the enjoyment of the same in such manner and by such means

5

as will leave them unimpaired for the enjoyment of future generations." 364 F.3d at 1272–74.

In the absence of any other authority, Pheasant seeks to rely on *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935) and *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)—the only two cases in which the Supreme Court has ever found that a statute violated the non-delegation doctrine, but those cases are readily distinguishable. The Supreme Court has described the provision at issue in *Panama Refining*, which permitted the President to prohibit the shipment of oil for any reason, as "provid[ing] literally no guidance for the exercise of discretion." *Whitman v. American Trucking Associations*, 531 U.S. 457, 474 (2001). There, "Congress left the matter to the President without standard or rule, to deal with as he pleased." *Panama Refining Co.*, 293 U.S. at 419. Similarly, in *A.L.A. Schechter Poultry Corporation*, the statute authorized private parties to write, and the President to approve or prescribe, "codes of fair competition" in order "to rehabilitate industry," 295 U.S. at 530-31, but did not prescribe any method of attaining that goal, any limitations on the nature of the codes that could be created, or the standards against which the codes should be adjudged. *See Yakus v. United States*, 321 U.S. 414, 424 (1944) (describing *Schechter*). The principal issue in *Schecter Poultry,* moreover, was not the absence of guidance to agency officials, but the authority conferred on

6

private persons. The power to write the codes was vested not in a "public official responsible to Congress or the Executive," but rather in "private individuals engaged in the industries to be regulated." *Id.*

For the reasons explained above and the government's Opening Brief, the delegation to the Secretary in FLPMA cannot plausibly be compared to the boundless delegations at issue in those cases, where Congress "placed almost no limits on how the President"—and in *Schechter*'s case, private groups—could wield the delegated authority." *See Big Time Vapes, Inc. v. Food & Drug Admin.*, 963 F.3d 436, 446 & n.27 (5th Cir. 2020) (upholding delegation to the Secretary of Health and Human Services to "deem which tobacco products should be subject to" the requirements of the Tobacco Control Act, and rejecting comparison to *Panama Refining* and *Schechter Poultry*); *accord Mistretta*, 488 U.S. at 373 n. 7 ("In *Schechter* and *Panama Refining* . . . Congress had failed to articulate any policy or standard that would serve to confine the discretion of the authorities to whom Congress delegated power.").

**B.    The Fact That the Regulations Promulgated Pursuant to FLPMA Include Criminal Sanctions Does Not Heighten the Standard of Review and, Even If It Did, FLPMA Passes this Hypothetical Heightened Standard.**

Pheasant devotes most of his brief to arguing that this Court should adopt a different standard than that established by the Supreme Court and applied by this Court and other courts of appeals. Pheasant asserts that because

7

Congress has provided that the violations of the regulations issued under the Act are subject to criminal penalties, a "more stringent" standard should apply.

Pheasant's argument reflects a fundamental misunderstanding of relevant principles. Congress often authorizes agencies to promulgate regulations, the violation of which Congress has made a crime. *See, e.g.*, *United States v. Grimaud*, 220 U.S. 506, 521-22 (1911) (recognizing that Congress may authorize an agency to promulgate "rules and regulations, the violation of which could be punished by fine or imprisonment fixed by Congress"); *see also United States v. Gurrola-Garcia*, 547 F.2d 1075, 1079 (9th Cir. 1976) ("It is well established that Congress may constitutionally provide a criminal sanction for the violation of regulations which it has empowered the President or an agency to promulgate"). Here, Congress authorized the Secretary to promulgate regulations "necessary to implement the Act," and Congress itself specified that "[a]ny person who knowingly and willfully violates any" such regulations shall be subject to criminal penalties, which Congress itself defined. *See* 43 U.S.C. § 1733(a).

The Supreme Court has never endorsed the distinction that Pheasant proposes. In *Grimaud*, for example, the Court upheld a conviction where the statute at issue made it an offense to graze animals in a federal forest in violation of regulations adopted by the Secretary of Agriculture, who was

8

"authorized 'to regulate the occupancy and use to preserve the forests from destruction.'" *See* 220 U.S. at 515-23; *see* OB 19–20.

Similarly, in *Yakus*, the Court upheld convictions under a statute that authorized the Price Administrator to set "fair and equitable" commodities prices. 321 U.S. at 422, 424. The Court explained that the delegation was valid because "Congress ha[d] stated the legislative objective," "prescribed the method of achieving that objective," and "laid down standards to guide" the administrator. *See id.* at 423; *see also Gundy*, 588 U.S. at 132-33, 135-36 (applying intelligible-principle test to delegation to Attorney General to specify application of sex-offender registration requirements to pre-Act offenders, where violation of requirements was subject to criminal penalty).

Further belying Pheasant's claim, the Supreme Court in *Mistretta* was unanimous in upholding Congress's delegation to the Sentencing Commission to promulgate then-binding Sentencing Guidelines for federal crimes. 488 U.S. at 377. The Court recognized the Sentencing Commission was granted "significant discretion in formulating [sentencing] guidelines," including "to determine the relative severity of federal crimes and to assess the relative weight of the offender characteristics." *Mistretta*, 488 U.S. at 377.

Pheasant relies on *Touby v. United States*, 500 U.S. 160, 166 (1991), but as this Court recently noted, the Supreme Court in *Touby* upheld a "broad 'public

9

safety' standard" in the context of a statute that "gave the Attorney General authority temporarily to designate a drug as a controlled substance, and through that authority "'promulgate regulations that contemplate criminal sanctions.'" *Melgar-Diaz*, 2 F.4th at 1268 (quoting *Touby,* 500 U.S. at 165-66). The Supreme Court "did not require the statute to decree how 'imminent' was too imminent, or how 'necessary' was necessary enough, or even … how 'hazardous' was too hazardous." *Whitman*, 531 U.S. at 476 (discussing *Touby*).

Thus, neither this Court nor other courts of appeals have adopted the higher standard that Pheasant proposes. Indeed, in *Brown*, as discussed above, the Eleventh Circuit applied the intelligible-principle test to uphold a delegation to the Secretary of the Interior to publish regulations "as he may deem necessary or proper for the use and management of the parks, monuments, and reservations," where Congress had made the violation of the Secretary's regulations subject to criminal penalty. *See* 364 F.3d at 1272, 1274–76. The Court explicitly rejected the defendant's argument that a "higher" standard should apply to assess the delegation, recognizing that Supreme Court precedent did not support a different test. *Id*.

The court of appeals cases cited by Pheasant are not to the contrary. Those cases did not conclude that a heightened standard applied but rather concluded that the delegation at issue would meet a heightened standard,

10

regardless, and thus found it "unnecessary" to "address" the argument. *See, e.g.*, *United States v. Amirnazmi*, 645 F.3d 564, 575-77 (3d Cir. 2011); *United States v. Dhafir*, 461 F.3d 211, 216-17 (2d Cir. 2006); *United States v. Arch Trading Co.*, 987 F.2d 1087, 1093-94 (4th Cir. 1993). None of those cases "required" a stricter standard, as Pheasant asserts. AB 17. Indeed, the Third Circuit has subsequently made clear that, in *Amiranzi*, it "did not" decide that any higher standard applied, and that under the Supreme Court's precedent, it must apply the "intelligible principle standard." *United States v. Cooper*, 750 F.3d 263, 271 (3d Cir. 2014).

Pheasant hypothesizes how the framers of the Constitution might have viewed FLPMA and compiles various concerns expressed by individual justices and judges regarding criminal penalties for violating regulations, *see* AB 18–31, but to the extent these views conflict with this Court's controlling precedent they are not relevant.[2]

---

[2] Pheasant's attempt to discern the framers' intent is incorrect in any event. *See, e.g.,* Julian Davis Mortenson, Nicholas Bagley, *Delegation at the Founding*, 121 Colum. L. Rev. 277, 282 (2021) ("Our conclusion is straightforward. The nondelegation doctrine has nothing to do with the Constitution as it was originally understood. You can be an originalist or you can be committed to the nondelegation doctrine. But you can't be both."); Cass R. Sunstein, *Nondelegation Canons*, 67 U. Chi. L. Rev. 315, 322 (2000) ("[I]t is more accurate, speaking purely descriptively, to see 1935 [the year that

11

C. **This Court Should Not Address Pheasant's Arguments Regarding Dismissed Counts that Are Not at Issue in this Appeal.**

Pheasant notes that the government did not appeal the dismissal of the other counts of the indictment—for which the government agreed to seek a superseding indictment before the district court ordered them dismissed—and asks this Court to hold that by so doing, the government waived its right to do so in the future. AB 44–47. That issue simply is not before this Court. If the government seeks to indict Pheasant in the future, he may assert whatever procedural defenses he chooses to, but such defenses are unripe presently.

---

the Supreme Court decided *Panama Refining Co*. and *Schechter*] as the real anomaly. We might say that the [nondelegation] doctrine has had one good year, and 211 bad ones (and counting).").

12

## III.

## CONCLUSION

For the reasons stated above and in the Opening Brief, the United States respectfully requests that this Court reverse the district court's order dismissing Count 3.

Dated this 2nd day of July, 2024.

                                         JASON M. FRIERSON
                                         United States Attorney

                                         s/ *Adam Flake*
                                         ADAM FLAKE
                                         Appellate Chief and
                                         Assistant United States Attorney
                                         501 Las Vegas Blvd S. Ste. 1100
                                         Las Vegas, NV 89101
                                         (702) 388-6336
                                         *Attorneys for the United States*

## IV.

## STATEMENT OF RELATED CASES

The government is not aware of any related cases.

Dated this 2nd day of July, 2024.

                                        s/ *Adam Flake*
                                        ADAM FLAKE
                                        Appellate Chief and
                                        Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE PURSUANT TO
# FED. R. APP. P. 32(a)(5), (6) AND CIRCUIT RULE 32-1

I hereby certify that:

Pursuant to Fed. R. App. P. 32(a)(5) and (6) and Ninth Circuit Rule 32-1, the attached **GOVERNMENT'S REPLY BRIEF** is proportionately spaced, has a typeface of 14 points, and contains 2,583 words, excluding the portions exempted by Fed. R. App. P. 32(f).

Dated this 2nd day of July, 2024.

*s/ Adam Flake*
ADAM FLAKE
Appellate Chief and
Assistant United States Attorney

15