CA No. 23-991

In the
United States Court of Appeals
For the Ninth Circuit

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

GREGORY PHEASANT,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Nevada,

**District Court No.** 3:21-cr-24 (Robert C. Jones, *J.*)

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S PETITION FOR PANEL
AND EN BANC REHEARING**

SIGAL CHATTAH
Acting United States Attorney

ADAM FLAKE
Appellate Chief and
Assistant U.S. Attorney
501 Las Vegas Boulevard South
Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
adam.flake@usdoj.gov
*Attorneys for the United States*

Date submitted: August 15, 2025

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT .................................................................................................... 2

III. ARGUMENT .................................................................................................... 4

    A.    *Standard for Granting Panel or En Banc Rehearing* ................................... 4

    B.    *Analytical Framework* ................................................................................ 4

    C.    *The Panel Correctly Held That Section 1733 Provides an Intelligible Principle and Thus Does Not Violate the Non-Delegation Doctrine* ............ 6

    D.    *The Panel Correctly Held That the Intelligible Principle Test Applies to Statutes That Provide Criminal Penalties.* ..................................................... 9

IV. CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*American Power & Light Co. v. SEC*,
    329 U.S. 90 (1946) ................................................................................ 5

*Consumers' Research v. FCC*,
    109 F.4th 743 (5th Cir. 2024) ................................................................ 9

*Fahey v. Mallonee*,
    332 U.S. 245 (1947) .............................................................................. 12

*FCC v. Consumers' Research*,
    145 S. Ct. 2482 (2025) .................................................................. passim

*Gundy v. United States*,
    588 U.S. 128 (2019) ............................................................................... 5

*Loving v. United States*,
    517 U.S. 748 (1996) ....................................................................... 10, 13

*Mistretta v. United States*,
    488 U.S. 361 (1989) ............................................................................... 5

*Touby v. United States*,
    500 U.S. 160 (1991) ....................................................................... 11, 12

*United States v. Brown*,
    364 F.3d 1266 (11th Cir. 2004) ............................................................ 10

*United States v. Cooper*,
    750 F.3d 263 (3d Cir. 2014) ........................................................... 10, 11

*United States v. Grimaud*,
    220 U.S. 506 (1911) ..................................................................... passim

*United States v. Melgar-Diaz*,
  2 F.4th 1263 (9th Cir. 2021) ..............................................................5, 6, 10

*United States v. Nichols*,
  775 F.3d 1225 (10th Cir. 2014) ............................................................10, 11

*United States v. Pheasant*,
  129 F.4th 576 (9th Cir. 2025) ........................................................... passim

*United States v. Pheasant*,
  2023 WL 3095959 (D. Nev. April 26, 2023) ................................................. 4

*Yakus v. United States*,
  321 U.S. 414 (1944) ................................................................................. 10


**Statutes**

43 U.S.C. § 1701 ................................................................................ 1, 3

43 U.S.C. § 1702 ....................................................................................2

43 U.S.C. § 1712 ....................................................................................2

43 U.S.C. § 1732 ................................................................................ 2, 3

43 U.S.C. § 1733 ........................................................................... passim

43 U.S.C. § 1761 ....................................................................................3


**Rules**

Fed. R. App. P. 32 .............................................................................. 15

Fed. R. App. P. 40 ........................................................................... 4, 15

# I.

# INTRODUCTION

Pheasant argues that 43 U.S.C. § 1733(a) of the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1701 et seq. ("FLPMA") provides "limitless" authority to the Secretary of the Interior ("Secretary") through the Bureau of Land Management ("BLM") to regulate federal land. Petition for Panel and En Banc Rehearing ("Pet.") at 2. His claim contravenes this Court's and the Supreme Court's precedent by reading Section 1733(a) "extravagantly" and in isolation. *FCC v. Consumers' Research*, 145 S. Ct. 2482, 2503, 2507 (2025). The Panel properly looked to the remainder of the FLPMA and correctly determined that in it, Congress "set out an intelligible principle to constrain" the Secretary's discretion in regulating federal lands. *United States v. Pheasant*, 129 F.4th 576, 579 (9th Cir. 2025) (citations, quotations, and alterations omitted).

In an attempt to avoid this result, Pheasant asks this Court to apply a standard more stringent than the intelligible principle test to Section 1733(a) because that section contains criminal penalties. Pet. 7–14. Applying a different test, however, would run afoul of precedent from the Supreme Court, this Court, and other circuits, all of which apply the intelligible principle test to statutes containing criminal penalties.

1

Pheasant has not shown that the Panel misapprehended or overlooked a point of law or fact, nor that the Panel's decision conflicts with any authority from the Supreme Court or this or any other circuit, nor that this case presents a question of exceptional importance. Panel or en banc rehearing is thus unwarranted. Indeed, adopting Pheasant's position would bring this Court into conflict with every court that has addressed the issues he raises—precisely the opposite of what en banc review is designed to do.

## II.

## STATEMENT

In Section 1733(a) of FLPMA, Congress granted the Secretary authority to promulgate and enforce regulations to facilitate his implementation of the mandates, set forth in FLPMA, to "manage the public lands under principles of multiple use and sustained yield," 43 U.S.C. § 1732(a), and "prevent unnecessary or undue degradation of the lands," *id.* § 1732(b). Congress defined the terms "multiple use" and "sustained yield," *id.* § 1702(c), (h), thereby providing specific direction as to how the Secretary, through the BLM, should execute Section 1732(a)'s mandate.

Other FLPMA provisions further delineate the boundaries of the rulemaking authority set out in Section 1733(a). Section 1712(c) sets the criteria that the BLM must account for in the specific context of developing

2

and revising land use plans, and Section 1761 identifies the purposes for which the BLM may issue rights-of-way, all of which further refines and directs the BLM's implementation of Section 1732(a) and its exercise of rulemaking authority under Section 1733(a).

Moreover, in passing FLPMA, Congress made clear the "general policy" that the BLM was to follow in exercising its authority under the statute. *See Consumers' Research*, 145 S. Ct. at 2497. In addition to the statutory direction in Sections 1702, 1712, 1732, and 1761, Section 1701 provides guidance as it "declares . . . the policy of the United States" with respect to the public lands. 43 U.S.C. § 1701. Among other things, it provides—consistent with Section 1732(a)—that the public lands' "management be on the basis of multiple use and sustained yield," *id*. § 1701(a)(7), and "in a manner which recognizes the Nation's need for domestic sources of minerals, food, timber, and fiber from the public lands." § 1701(a)(12). It additionally articulates federal policy that "the public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values," including "preserv[ing] and protect[ing] certain public lands in their natural condition," "provid[ing] food and habitat for fish and wildlife and domestic animals," and "provid[ing] for outdoor recreation and human occupancy and use." *Id*. § 1701(a)(8).

The district court held that Section 1733(a) violated the non-delegation doctrine because it gave the Secretary unlimited power to regulate the use of federal land. *United States v. Pheasant*, 2023 WL 3095959 (D. Nev. April 26, 2023). The Panel correctly reversed, holding that the remainder of the FLPMA provides an intelligible principle that meaningfully constrains the Secretary's discretion and that the intelligible principle test applies to statutes carrying criminal penalties, 129 F.4th at 576–83, as explained more fully below.

## III.
## ARGUMENT

**A.   Standard for Granting Panel or En Banc Rehearing**

Under Federal Rule of Appellate Procedure 40, panel rehearing is warranted when the panel has misapprehended or overlooked a point of law or fact. Fed. R. App. P. 40(b)(1). Rehearing en banc is warranted when the panel decision conflicts with a decision of the Supreme Court, this Court or another circuit, or if the proceeding involves a question of exceptional importance. Fed. R. App. P. 40(b)(2).

**B.   Analytical Framework**

The non-delegation doctrine generally forbids Congress from transferring "powers which are strictly and exclusively legislative" to other branches of government. *Gundy v. United States*, 588 U.S. 128, 135 (2019) (internal citation

4

omitted). But the Supreme Court has consistently held that Congress "may 'obtain[] the assistance of its coordinate Branches'—and in particular, may confer substantial discretion on executive agencies to implement and enforce the laws." *Id.* (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)) (alterations in *Gundy*). It has further recognized that "in our increasingly complex society, replete with ever changing and more technical problems . . . Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta*, 488 U.S. at 372. The Supreme Court has explained that a delegation is "constitutionally sufficient if Congress clearly delineates" (1) "the general policy" to be pursued, (2) "the public agency which is to apply it," and (3) "the boundaries of th[e] delegated authority." *American Power & Light Co. v. SEC*, 329 U.S. 90, 104 (1946); *see also United States v. Melgar-Diaz*, 2 F.4th 1263, 1267 (9th Cir. 2021) ("This means that a delegation is permissible if Congress has made clear to the delegee the general policy [the delegee] must pursue and the boundaries of [the delegee's] authority.") (citations, quotations, and alterations omitted).

The Supreme Court recently addressed and rejected a non-delegation challenge in *Consumers' Research*, 145 S. Ct. 2482. The Court explained, "[I]n examining a statute for the requisite intelligible principle, we have generally assessed whether Congress has made clear both the general policy that the

5

agency must pursue and the boundaries of its delegated authority[,]" whether "Congress has provided sufficient standards to enable both the courts and the public to ascertain whether the agency has followed the law," and "[i]f Congress has done so—as we have almost always found—then we will not disturb its grant of authority." *Id.* at 2497 (citations, quotations, and alterations omitted). In so holding, the Court cautioned against reading statutes "extravagantly" so as to "create a constitutional problem." *Id.* at 2507.

### C. The Panel Correctly Held That Section 1733 Provides an Intelligible Principle and Thus Does Not Violate the Non-Delegation Doctrine.

As the Panel noted in its opinion, the intelligible principle test is not a difficult bar, and the statute at issue here adequately cabins the Secretary's authority to regulate public land. *Pheasant*, 129 F.4th at 579 (noting that the intelligible principle test "is an exceedingly modest limitation" (quoting *Melgar-Diaz*, 2 F.4th at 1266)); *id.* at 580 ("As long as Congress has provided *some* standard constraining discretion—even one phrased in broad terms—the Supreme Court has upheld statutes against constitutional scrutiny.") (collecting cases).

The Court correctly held that the statute at issue easily satisfies the "intelligible principle" test because the provisions of FLPMA "set out a clear principle: The Secretary must develop a long-term management strategy to realize the land's value in a sustainable way." *Id.* at 580.

6

The Panel compared this case with *United States v. Grimaud*, 220 U.S. 506 (1911). There,

> the Court considered a statute authorizing the Secretary of Agriculture to issue rules "regulating the use and occupancy of the public forest reservations and preserving the forests thereon from destruction." *Id*. at 509, 31 S.Ct. 480. Acting under that authority, the Secretary issued a regulation—backed by criminal penalties— prohibiting grazing in a forest reserve without a permit. *Id*. at 514, 31 S.Ct. 480. The Court held that the statute sufficiently constrained the Secretary's authority because it "clearly indicated" that he was "to make provision to protect [the lands] from depredations and from harmful uses." *Id*. at 522, 31 S.Ct. 480.

*Pheasant*, 129 F.4th at 580–81. Applying *Grimaud* here, the Panel held, "Section [1733(a)] and its complementary provisions provide similar guidance to the Secretary of the Interior. As in *Grimaud*, the constraints imposed by the FLPMA are enough to satisfy Article I," and that "[t]he FLPMA thus makes clear that section [1733(a)] does not, as Pheasant suggests, permit the Secretary to issue any regulation he wishes with a colorable connection to the use of public lands. Instead, the remainder of the statute specifies the policy goals that the Secretary must advance." *Id*. at 581.

Pheasant seeks to distinguish *Grimaud* because it predates the Supreme Court's articulation of the intelligible principle test. Pet. at 17. But Pheasant cites no authority overruling *Grimaud*, and accordingly, it continues to bind this Court. Moreover, while the Supreme Court did not coin the phrase "intelligible principle" in *Grimaud*, it applied similar scrutiny to the statute at

7

issue there. *See Grimaud*, 220 U.S. at 522 ("The Secretary of Agriculture could not make rules and regulations for any and every purpose. . . [The rules and regulations at issue here] all relate to matters clearly indicated and authorized by Congress. The subjects as to which the Secretary can regulate are defined. The lands are set apart as a forest reserve. He is required to make provision to protect them from depredations and from harmful uses. He is authorized 'to regulate the occupancy and use and to preserve the forests from destruction.'"). As explained above, the Panel correctly applied the same logic here.

Noting that the BLM regulates a great deal of land geographically located in the Circuit, Pheasant describes this case as "immensely important" and posits that the non-delegation doctrine is "controversial in any context." Pet. at 13. But as the Panel recognized, Section 1733(a)'s "relationship to public lands counsels in favor of more, rather than less, deference to Congress's choice about the degree of responsibility to assign to the Executive Branch" because "Congress can, without creating a delegation problem, circumscribe the 'implied license under which the United States [allows] its public domain to be used' by authorizing an agency to make 'rules and regulations' that define 'an unlawful use of the government's property.'" *Pheasant*, 29 F.4th at 582 (quoting *Grimaud*, 220 U.S. at 521) (alteration in *Pheasant*).

8

In support of his claim that the non-delegation doctrine is "controversial in any context," Pheasant cites the Fifth Circuit's opinion in *Consumers' Research v. FCC*, 109 F.4th 743 (5th Cir. 2024), in which the Fifth Circuit held that the Telecommunications Act of 1996 violated the non-delegation doctrine. Pet. at 13. As explained above, however, the Supreme Court reversed that decision, held that the statute at issue contained an intelligible principle, rejected the notion that a delegation that included the power to set taxation rates triggers a test more stringent than the intelligible principle test, and warned against reading statutes extravagantly to create constitutional problems. *Consumers' Research*, 145 S.Ct. at 2496–2512. Pheasant's interpretation of the non-delegation doctrine would indeed be controversial, but the Panel's straightforward application of precedent to the facts of this case is not. Congress's ability to delegate authority to regulate federal land, as well as Congress's power to create criminal penalties for violations of those regulations, particularly in regulating federal lands, has been well established for over 100 years. *See, e.g.*, *Grimaud*, 220 U.S. at 522. Rehearing is thus unwarranted.

**D.     The Panel Correctly Held That the Intelligible Principle Test Applies to Statutes That Provide Criminal Penalties.**

As the Panel correctly recognized, the Supreme Court, this Court, and other circuits have repeatedly applied the intelligible principle test to statutes

9

carrying criminal penalties. *Pheasant*, 129 F.4th at 583 (citing *United States v. Grimaud*, 220 U.S. at 521; *Yakus v. United States*, 321 U.S. 414, 418, 427 (1944); *Loving v. United States*, 517 U.S. 748, 771–72 (1996)); *Melgar-Diaz*, 2 F.4th at 1266; *United States v. Nichols*, 775 F.3d 1225, 1232 (10th Cir. 2014), *rev'd on other grounds*, 578 U.S. 104 (2016); *United States v. Cooper*, 750 F.3d 263, 270–71 (3d Cir. 2014)); *cf. Consumers' Research*, 145 S. Ct. at 2497 (2025) (rejecting contention that a heightened standard applies to a statute creating a tax, and applying the intelligible principle test).

    In an apparent attempt to escape the result of the rather straightforward application of the intelligible principle test to the statute at issue, Pheasant argues that something more stringent than the intelligible principle test should apply to statutes which carry criminal penalties. Pet. at 7–14. But Pheasant cites no authority that actually supports his claim—and indeed, adopting Pheasant's view would bring this Circuit's law into conflict with at least one other circuit where the Court considered and expressly rejected a claim that a heightened showing is required for statutes carrying criminal penalties, *see United States v. Brown*, 364 F.3d 1266, 1272, 1274–76 (11th Cir. 2004)—a result antithetical to en banc review. Moreover, the Supreme Court recently cautioned against reading statutes "extravagantly" so as to create constitutional problems, *Consumers' Research*, 145 S.Ct. at 2507, but Pheasant

urges the Court to do exactly that—claiming that the statute at issue provides the Secretary with "limitless" power to regulate federal land. Pet. at 2.

Pheasant seeks to distinguish *Melgar-Diaz*, in which this Court upheld a statute providing criminal penalties after applying the intelligible principle test, by parsing the Panel's treatment of that case. Pheasant objects to the Panel's conclusion that "[e]ven in the criminal context, the 'intelligible principle' test provides the controlling legal standard for evaluating non-delegation challenges," and claims that *Melgar-Diaz* "says no such thing." Pet. at 3 (quoting *Pheasant*, 129 F.4th at 583). But Pheasant's objection amounts to noting differences among the details of each statute in an attempt to avoid the conclusion that both statutes satisfy the intelligible principle test when applied, as it should be. *See id*. Ultimately, the Panel cited *Melgar-Diaz* as just one of many cases applying the intelligible principle test to statutes that carry criminal penalties. *Pheasant*, 129 F.4th at 583 (citing *Nichols*, 775 F.3d at 1232; *Cooper*, 750 F.3d at 270–71).

Pheasant relies on *Touby v. United States*, 500 U.S. 160, 165 (1991), for the proposition that whether the intelligible principle test applies in the criminal context is an open question. Pet. at 6. But *Touby* did not embrace a different standard for criminal statutes. The petitioner in *Touby* conceded, and the Court agreed, that the statute supplied an intelligible principle. 500 U.S. at

11

165. The petitioner argued, however, that "something more than an 'intelligible principle' is required when Congress authorizes another Branch to promulgate regulations that contemplate criminal sanctions." *Id.* at 165–66. Although the Court suggested that a passage in *Fahey v. Mallonee*, 332 U.S. 245 (1947), had created potential uncertainty on the point, *Touby*, 500 U.S. at 166 (stating that the Court's cases "are not entirely clear," and contrasting *Fahey* with *Mistretta*, *Yakus*, and *Grimaud*), *Touby* did not endorse petitioner's argument. Instead, the Court concluded that the Controlled Substances Act provision at issue "passe[d] muster even if greater congressional specificity [were] required." *Id.* Moreover, *Fahey* did not adopt or apply a heightened standard to a statute imposing criminal sanctions. That issue was not presented because the case involved civil regulations governing savings-and-loan associations. 332 U.S. at 249–50.

As the Panel correctly recognized, the Supreme Court and this Court have repeatedly applied the intelligible principle test in contexts in which criminal penalties arise. *Pheasant*, 129 F.4th at 583 (collecting cases). This Court cannot depart from that test without running afoul of these precedents.

Pheasant also incorrectly argues that the BLM, not Congress, criminalized his conduct. Pet. at 11. As the Panel recognized, that argument lacks merit: "It is Congress, not BLM, that created a criminal offense by

12

providing that '[a]ny person who knowingly and willfully violates any such regulation which is lawfully issued pursuant to this Act shall be fined no more than $1,000 or imprisoned no more than twelve months, or both.'" *Pheasant*, 129 F.4th at 582 (quoting 43 U.S.C. § 1733(a)). The Supreme Court repeatedly has recognized the importance of this distinction. *See, e.g.*, *Grimaud*, 220 U.S. at 522 ("[a] violation of reasonable rules regulating the use and occupancy of the property is made a crime, not by the Secretary, but by Congress. The statute, not the Secretary, fixes the penalty."); *Loving*, 517 U.S. at 768 ("We have upheld delegations whereby the Executive . . . defines by regulation what conduct will be criminal, so long as Congress makes the violation of regulations a criminal offense and fixes the punishment, and the regulations 'confine themselves within the field covered by the statute.'") (quoting *Grimaud*, 220 U.S. at 518) (brackets omitted). Pheasant's argument ignores those precedents, which remain binding, and the important distinction they draw. *See* Pet. at 11–12.

Pheasant has not identified anything in the Panel's decision that conflicts with existing law or raises a question of immense importance, and thus rehearing is unwarranted.

## IV.

## CONCLUSION

For the reasons stated above, this Court should deny panel and en banc rehearing.

Dated this 15th day of August, 2025.

                                                SIGAL CHATTAH
                                                Acting United States Attorney

                                                s/ *Adam Flake*
                                                ADAM FLAKE
                                                Appellate Chief and
                                                Assistant United States Attorney
                                                501 Las Vegas Blvd S. Ste. 1100
                                                Las Vegas, NV 89101
                                                (702) 388-6336
                                                *Attorneys for the United States*

# CERTIFICATE OF COMPLIANCE PURSUANT TO
# FED. R. APP. P. 32(a)(5), (6) AND CIRCUIT RULE 32-1

I hereby certify that:

Pursuant to Fed. R. App. P. 40 and Ninth Circuit Rule 40-1, the attached **GOVERNMENT'S RESPONSE TO DEFENDANT'S PETITION FOR PANEL AND EN BANC REHEARING** is proportionately spaced, has a typeface of 14 points, and contains 2,917 words, excluding the portions exempted by Fed. R. App. P. 32(f).

Dated this 15th day of August 2025.

*s/ Adam Flake*
ADAM FLAKE
Appellate Chief and
Assistant United States Attorney